JEAN C. VERNALI ET AL. v. CARMINE J. CENTRELLA

SUPERIOR COURT    LITCHFIELD COUNTY    FILE NO. 20989

Memorandum filed May 26, 1970

*Januszewski, McQuillan & DeNigris,* of New Britain, for the plaintiffs.

*Upson, Secor, Greene & Cassidy,* of Waterbury, for the defendant.

MEYERS, J. The complaint sets out that in March, 1967, the parties to this action entered into a contract in which it was agreed that for a sum certain, which the plaintiffs agreed to and did pay, the defendant builder-vendor would construct, in accordance with plans and specifications, and turn over to the plaintiffs, a house on Trescott Hill Road in North Canaan. The defendant, it is alleged, directed and completed the construction, furnishing all materials and labor. Certain representations were made by him and relied on by the plaintiffs, according to their allegations, including the representation that he was capable and qualified to undertake and complete the construction. It is further alleged that the fireplace built in the house was used on November 6, 1967, and that night what might be termed an unfriendly fire occurred in the wall immediately to the rear of the fireplace and spread to and destroyed or damaged other walls, ceilings and floors of the house, causing extensive damage thereto. The plaintiffs seek money damages for the loss occasioned by the fire, which is claimed by them to have resulted from several described failures, improprieties and insufficiencies in the construction of the house by the defendant.

The instant demurrer attacks the sufficiency of the second count of the complaint to state a cause of action. That count sounds in breach of implied warranty and is to the effect that the construction by the defendant was to have been, but failed to be, in

good workmanlike manner and suitable for the purpose for which it was intended, namely, a place of residence for the plaintiffs. The defendant's claimed ground of demurrer is that "the law does not impose an implied warranty on the construction of a building as alleged in the complaint." With this position this court is not in accord.

Only for the reason that caveat emptor and the Uniform Commercial Code have been referred to in the briefs or in oral argument on this demurrer are comments as to both included.

The sustaining of the defendant's demurrer would be tantamount to the effective operation of the rule of caveat emptor. Indeed, it would be a harsh result were the purchaser of a new home rendered powerless by the summary denial to him of the right to seek damages where, for instance, defects occurred in the building of his home which were not visible to the eye before he took possession. Included in such defects and as examples might be a roof not properly installed, or one affording poor and insufficient protection from the elements, or a foundation which gave way to the weight of the structure thereon shortly after the owner took possession, or the use of insufficient supporting timbers for an upper floor, so that a visible sagging thereof beyond normal tolerances resulted. The construction of a chimney with combustible material as a lining or with improper openings also might be an example of a defect not readily visible before the stack was put to use. As a matter of fact, kindred latent defects too numerous to enumerate might show themselves soon after delivery of a new structure. Fairness and reason dictate that there should be access to judicial determination, if need be, as to the correction of such defects, or adjustment because of them, without vulnerability to defeat by the rule

of caveat emptor. It has been held that one who constructs a building impliedly warrants that the building shall be erected in a workmanlike manner and in accordance with good usage and the accepted practices in the community in which the construction and work are done. *Mann* v. *Clowser,* 190 Va. 887, 901 (1950).

The rule of caveat emptor had its origin during the sixteenth century in the then chancy conditions of English trade operations as they dealt with chattels and personalty. Subsequently, the rule became an integral part of our own business dealings. Hamilton, "The Ancient Maxim Caveat Emptor," 40 Yale L.J. 1133, 1164, 1178–80 (1931). Basically, such a doctrine applies to a sale and transfer when the purchaser has had the opportunity of investigating and inspecting what he is dealing for and buying, and when his observations would disclose defects which are material. *Sperry Rand Corporation* v. *Industrial Supply Corporation,* 337 F.2d 363, 370 (5th Cir. 1964); *Lindberg* v. *Coutches,* 167 Cal. App. 2d 828, 833 (1959).

In the acceptance by the purchaser-owner of defective performance under a contract for construction of a house, there arises no legal presumption that such acceptance discharges any right of damages for those defects unless a length of time unreasonable under all of the circumstances elapses without complaint. 5 Williston, Contracts (3d Ed.) § 724. The question is one of fact. It is generally held that the mere fact that a purchaser-owner of a building has taken possession thereof after its erection does not in itself constitute an acceptance of the workmanship of the contractor-builder in each respect. *Mitchell* v. *Carlson,* 132 Mont. 1 (1957); *Garbis* v. *Apatoff,* 192 Md. 12, 19 (1949); *Wood* v. *Blanchard,* 212 Mass. 53, 56 (1912). The common-

law principle of caveat emptor or purchasing at one's peril presupposes that the buyer is on an equal footing with the seller and that he relies on his own reasoning and judgment. *Barnard* v. *Kellogg,* 77 U.S. (10 Wall.) 383 (1871); *Grass* v. *Steinberg,* 331 Ill. App. 378 (1947). Though the rule was formerly of general application, presently it is clear from the trend of authorities that it has "more or less been reversed, although not to the extent that the maxim 'caveat venditor' would apply." 46 Am. Jur. 276, Sales, § 87.

Whether we consider implied warranties to be the opposites of or "exceptions to . . . the maxim 'caveat emptor,'" the fact remains that there has been and is a continued and increasing tendency on the part of our courts to broaden and extend the area of activity of implied warranties. 46 Am. Jur. 520, Sales, § 337. Our Supreme Court employed in a general way the rationale of implied warranty even in much earlier days. *Bailey* v. *Nickols,* 2 Root 407 (1796); Lessler, "Implied Warranty of Quality in Sales of Food," 14 Conn. B.J. 47, 53 (1940).

"The law is clear that a contract includes not only what is expressly stated therein but also what is necessarily implied from the language used. *Rockwell* v. *New Departure Mfg. Co.,* 102 Conn. 255, 287 . . . ; 13 C.J. p. 558, § 521. . . . 'If it can be plainly seen from all the provisions of the instrument taken together, that the obligation in question was within the contemplation of the parties when making their contract, or is necessary to carry their intention into effect—in other words, if it is a necessary implication from the provisions of the instrument—the law will imply the obligation and enforce it.' 6 R.C.L. p. 856, § 244; *Lawler* v. *Murphy,* 58 Conn. 294, 311 . . . ." *Leventhal* v. *Stratford,* 121 Conn. 290, 295 (1936).

It may be stated that the law of express and implied warranty is a part of and is distinguished in the Uniform Commercial Code. General Statutes §§ 42a-2-313—42a-2-318. Therein, it appears that implied warranty may exist where no specific promise is made by the seller to the buyer, but where the former is one who normally deals in the type of goods sold and has at the time of contracting some reason to believe what the purpose or use of the goods is and that the buyer is in some measure relying on the skill of the seller. §§ 42a-2-314, 42a-2-315. Further, the application of the code is limited to all things which are movable or severable from realty. § 42a-2-105 (1). Similarly, the code does not apply to lumber, bricks, cement and other like building materials unless the resultant structure remains personalty under applicable law. § 42a-9-313 (1). From all of this, it is clear both that the code does not relate to real property and that it has virtually eliminated the doctrine of caveat emptor with regard to the sale of personalty. That doctrine still does apply to the sale of realty in many areas. Bearman, "Caveat Emptor in Sales of Realty — Recent Assaults upon the Rule," 14 Vand. L. Rev. 541, 542 (1961).

Exceptions to the rule of caveat emptor exist as it applies to the sale of real estate; they arise through the concept of negligence. *Dow* v. *Holly Mfg. Co.,* 49 Cal. 2d 720, 725 (1958). In that case, the defendant, a general contractor, supervised the installation of a gas heater in a new home bought by the plaintiff. The latter's husband and their two children lost their lives through asphyxiation on the premises. The plumbing contractor's negligence in installation of the unit was established, and the defendant general contractor was held liable therefor. The California court extended further the thrust of *MacPherson* v. *Buick Motor Co.,* 217 N.Y.

382 (1916). The holding in that landmark decision was that the manufacturer was liable to the ultimate user of the automobile for personal injuries resulting from the negligence of the manufacturer in using defective parts and in the faulty assembly of the vehicle. The *Dow* case, supra, held that the general contractor who assembles housing material and components and furnishes and directs the labor in the installation thereof is liable for any negligence shown to have taken place in and during that effort. There was an extension of this principle by finding strict liability of a builder-vendor for injury to someone on the premises. *Schipper* v. *Levitt & Sons, Inc.,* 44 N.J. 70 (1965). So, it is not to be denied that the common law as a vehicle of justice suffers no loss of power through continued use and application. It possesses an infinite capacity to grow, to keep abreast of current requirements, and to be alert to changing needs and mores.

The principle of caveat emptor as applied to sales of realty has suffered further by the application of the force of effective warranty. It has been held that an implied warranty to construct in a workmanlike manner would be applicable where the purchaser-owner contracted with the vendor-builder to build a dwelling house. *Perry* v. *Sharon Development Co.,* [1937] 4 All E.R. 390. It has been said: "The doctrine expressed in *Perry* reflected the general custom of the time whereby the prospective purchaser would buy a plot of land and subsequently he would contract with a builder to construct the house. The construction contract contained a promise, either express or implied, to build the house in a workmanlike manner according to specifications. Thus, the homebuyer was afforded protection against poor quality construction. The rule in *Perry* was adopted by most jurisdictions in this country." Caldwell, "An Implied Warranty of Fit-

ness and Suitability," 6 Houston L. Rev. 176, 179 (1968). For additional acknowledgment of the need of protection for the buyer against faulty and defective construction, see *Waggoner* v. *Midwestern Development, Inc.,* 83 S.D. 57 (1967), and *Carpenter* v. *Donohoe,* 154 Colo. 78, 83 (1964).

A case on facts similar to those in the cause with which we are concerned was decided adversely to the defendant on this question of implied warranty, and also there was included the elimination of the doctrine of caveat emptor. *Humber* v. *Morton,* 426 S.W.2d 554, 555, 557 (Tex. 1968), and cases cited. The plaintiff, in *Humber,* had bought a new house from the defendant, a builder-vendor. A few months later, and on her first occasion to use the fireplace, her house was damaged severely by an unwanted fire found to have been caused by the existence of an unsealed opening or hole in the fireplace. She brought an action claiming negligence in the construction of the fireplace and breach of implied warranty of fitness.

It has been held in our state, also, that there exists warranty by implication as to the furnishing of labor, material and workmanship in construction connected with real property. *Premco Drilling, Inc.* v. *Maillet Bros. Builders, Inc.,* 3 Conn. Cir. Ct. 519, 523 (1965); *Duffy* v. *Woodcrest Builders, Inc.,* 2 Conn. Cir. Ct. 137, 141 (1963). The court refused to sanction delivery with absolution for the need of performance in a workmanlike manner in *Fellenbaum* v. *Markowski,* 4 Conn. Cir. Ct. 363, 366 (1967).

There is here more involved than, as urged by the defendant in oral argument, a contract for services. Included were material, labor and responsibility for the total construction and the finished product; it was no simple hourly or daily repairs contract under

control and direction of the plaintiffs. See *Hoye* v. *Century Builders, Inc.*, 52 Wash. 2d 830 (1958).

It is not here incumbent upon this court to decide the issues of the case. Now, it is but the province of this court to pass upon the sufficiency of the second count to state a cause of action. To approve of the defendant's contention as advanced in his demurrer would result in a summary dismissal of the opportunity which this court, for the reasons herein set out, believes that these plaintiffs should have to offer proof in support of the implied warranty which they claim.

The instant demurrer is overruled.