WILLKINGS L. HARTLEY v. GEORGE R. BALLOU AND WIFE, MILDRED H. BALLOU

No. 733SC773

(Filed 16 January 1974)

1. Sales § 17— finding supported by evidence — review
    In a breach of warranty action to recover for water damage sustained as the result of improper construction of a house, the trial court's finding with respect to waterproofing of the basement, leakage after repairs, and specific amounts expended to repair the basement and damaged appliances was supported by competent evidence and is affirmed on appeal.

2. Sales § 6— house sale by builder — implied warranty of fitness
    In the sale of a house by a builder-vendor, there is an implied warranty that the house has been or will be completed in an efficient and workmanlike manner and that it will be suitable for habitation upon completion, and this implied warranty applies irrespective of the status of the house relative to completion.

3. **Sales § 19— sale of house — water leakage — breach of implied warranty of fitness — measure of damages**

The measure of damages in an action based on breach of warranty is the difference between the fair market value of the article as warranted and as delivered, together with such special damages as were within the contemplation of the parties; therefore, where plaintiff purchased a house from defendant builder and the basement flooded repeatedly, plaintiff was entitled to the difference in market value of the house and to the cost of repairs to appliances, cleaning and painting, air travel and cablegrams, extra heating and air conditioning and pumping water from the house, since it was within the contemplation of the parties at the time of the making of the contract that improper construction could lead to water damage with attendant expenses to plaintiff.

APPEAL by defendant from *Tillery, Judge,* February 1973 Session, CARTERET County Superior Court.

Defendant and his wife were the owners of a lot in the River Heights subdivision of Morehead City. On 24 October 1969, plaintiff and his wife (now deceased) contracted to buy from defendant a completed house built by him on said lot. The transaction was closed on 4 December 1969, and around Christmas day 1969 plaintiff's wife moved into the house while plaintiff, a Marine Engineer, was at sea.

When plaintiff returned home on 18 February 1970, he found that the house was still wet from seepage that occurred during his absence. The carpeting had been removed from the basement, two inches of concrete had been added to the floor and there had been an attempt to waterproof the basement walls with tar paper.

Defendant had, during the period of plaintiff's absence, made extensive efforts to correct the situation. He had dug drainage ditches, poured two inches of concrete in the basement and attempted to seal the blocks of the foundation with hot tar and tar paper. The ditches around the foundations were backfilled with gravel. These repairs were made at an expense to defendant of $4,000.

Plaintiff testified that after February 1970, he saw no more water in the basement until October 1971, when the area experienced its first hurricane of the season with six to seven inches of rain. At that time there was two feet of water in the basement, and mold began to form in part of the house. Since the water in the basement did not recede, plaintiff had it pumped

and had to make several repairs to appliances damaged in the house.

In February 1972, the Morehead City area experienced its second hurricane of the season with a rainfall of approximately five inches. The basement of plaintiff's house was again flooded, with 18 to 24 inches of water. After about half the water had receded, plaintiff repeated the process of having the basement pumped, the appliances repaired and the rugs cleaned. On 23 February 1972, plaintiff sold the house to C. H. Bennett, the developer of the subdivision.

Over defendant's objection, plaintiff was allowed to testify as to his opinion of the fair market value of the house as well as to the expenses incurred in the repairs following the flooding.

At the close of plaintiff's case, defendant moved for a directed verdict. The motion was granted as to defendant Mildred H. Ballou, since no connection was shown between her and the building of the house. The motion was denied as to defendant George R. Ballou. The motion as to defendant George R. Ballou was renewed and again denied at the close of all the evidence. From judgment entered against him defendant appeals.

*Hamilton, Hamilton, and Phillips, by Luther Hamilton, Jr., for plaintiff appellee.*

*Bennett and McConkey, P.A., by Thomas S. Bennett and James W. Thompson III, for defendant appellant.*

MORRIS, Judge.

[1] Defendant first assigns error to the court's findings of fact and conclusions of law. He contends the following finding of fact was erroneous:

"The garage was built on a concrete slab on top of the ground and extended northwardly from the north wall of the basement and waterproofing could not be applied to the entire length of the outside of the north wall of the basement."

The testimony in the record is to the effect that the garage was in fact built on a slab abutting the north wall of the house. There was, in addition, testimony that the men attempting to

waterproof the basement wall were unable to get to the entire length of the wall beneath the carport. Where jury trial is waived—as it was in this case—the court's findings of fact are conclusive if supported by any competent evidence and will be affirmed on appeal. *Nichols v. Insurance Co.*, 12 N.C. App. 116, 182 S.E. 2d 585 (1971). For the same reason, there is no merit to the assignment of error to the finding that the wall continued to leak following the repairs in January and February, 1970. The testimony is uncontradicted that approximately 18 months after the repairs the basement was again flooded. Likewise, the findings of fact with respect to specific amounts expended to repair the basement and appliances are supported by competent evidence, and they are affirmed.

Defendant's next group of assignments of error presents to this Court a case of first impression, i.e., whether there is an implied warranty of fitness or habitability in a sale of residential real estate between a builder-vendor and a buyer. Our research reveals no case in the appellate courts of this State which have spoken to this issue. In *Lindstrom v. Chesnutt*, 15 N.C. App. 15, 189 S.E. 2d 749 (1972), we found it unnecessary to reach the issue of implied warranty inasmuch as the evidence presented was sufficient to allow the jury to find an express warranty in the contract of sale. We continue to acknowledge, however, the current trend in this area away from the concept of *caveat emptor* and toward the concept of implied warranty of fitness. As we noted in *Lindstrom v. Chesnutt, supra,* the purchase of a home is not an everyday transaction for the average family, and, in many instances, it is the most important transaction of a lifetime.

The majority of jurisdictions continue to apply the rule of *caveat emptor* to sales of dwellings by builder-vendors. Annot. 25 A.L.R. 3d 383. The rationale behind this line of authority was cogently expressed by the Supreme Court of Alabama in *Druid Homes, Inc. v. Cooper*, 272 Ala. 415, 131 So. 2d 884 (1961). Plaintiff homeowner brought action against defendant builder-vendor to recover for damage caused when water from bathroom facilities emptied under the house without any drainage. In holding that there were no implied warranties as a matter of law in a contract to purchase real estate, the Court set forth the basis for the necessity of such a rule. The need for certainty of title in real estate transactions was among the foremost of the Court's considerations, and it noted that the

Hartley v. Ballou

purchaser is free to protect himself by express agreement. The Court distinguished the body of law recognizing implied warranties with respect to sales of personalty, and noted that such warranties ordinarily apply only to sales of articles which—unlike land—are susceptible to uniformity and standard quality or are sold by samples.

Several jurisdictions have adopted the so-called "English Rule" recognizing implied warranties of fitness or habitability, but limiting their application to cases where the house was under construction at the date of the contract and completed later. In *Miller v. Cannon Hill Estates, Ltd.*, 2 K.B. 113 (1931), plaintiff purchased a house under construction, but was forced to abandon it because of the excessive moisture he discovered following completion of the house. In holding that there are implied warranties in the sale of an uncompleted house, the King's Bench distinguished the cases dealing with a house completed prior to the contract for sale. The very nature of the transaction, said the Court, makes it clear that the purchaser intends to use the house built for him as a dwelling upon its completion, whereas the purchaser of a completed dwelling may have many purposes for the building. Since the house is completed, he is, unlike the purchaser of an uncompleted dwelling, able to notice obvious defects and to protect himself with an express warranty. Thus, reasoned the Court, the buyer of an uncompleted dwelling is entitled to rely upon an implied warranty that the house will be completed in a manner to make it suitable for habitation. Among the decisions adopting the English rule in this country are *Glisan v. Smolenske*, 153 Colo. 274, 387 P. 2d 260 (1963) ; *Minemount Realty Co., Inc. v. Ballentine*, 111 N.J.Eq. 398, 162 A. 594 (1932) ; *Vanderschrier v. Aaron*, 103 Ohio App. 340, 140 N.E. 2d 819 (1957) ; *Jones v. Gatewood*, 381 P. 2d 158 (Okla. 1963) ; *Hoye v. Century Builders*, 52 Wash. 2d 830, 329 P. 2d 474 (1958).

While the gradual acceptance of the English rule in the past two decades represents a departure from the firmly entrenched majority rule of *caveat emptor* in the sale of dwelling house, recent decisions in several states have expanded the English rule—extending the application of implied warranties of habitability to houses completed prior to contract of sale. Among the leading cases in this recent line is *Carpenter v. Donohoe*, 154 Colo. 78, 388 P. 2d 399 (1964), wherein the Court held that there is no basis for applying a different rule to the sale of a near completed house than to a completed house.

---

---

"That a different rule should apply to the purchaser of a house which is near completion than would apply to one who purchases a new house seems incongruous. To say that the former may rely on an implied warranty and the latter cannot is recognizing a distinction without a reasonable basis for it." *Id.* at 83.

The English rule has likewise been extended in the following cases: *Bethlahmy v. Bechtel,* 91 Idaho 55, 415 P. 2d 698 (1966) ; *Schipper v. Levitt & Sons, Inc.,* 44 N.J. 70, 207 A. 2d 314 (1965) ; *McKeever v. Mercaldo,* 3 Pa. D. & C. 2d 188 (1954).

We agree that a completed house can be inspected, to a limited extent, for defects by a purchaser before he signs the contract to buy. However, looking at the situation in a practical way, we are of the opinion that most potential homeowners lack the competency to do their own inspections. Even if he were skilled, there is little he could uncover, because most litigation is over defects which are found in the home's foundation. This can only be checked effectively at a time when none of the building proper has been constructed. It would seem to us, therefore, that the purchaser of a completed house is relying much more heavily on the superior skill and knowledge of the builder than is the purchaser of a house under construction.

Another anomalous outcome is the situation where a developer is constructing more than one house in a subdivision. One who purchases one of the houses one day before it is completed gets the benefits of an implied warranty that the house is free from structural defects and fit for habitation. The one who buys the house next door two days later—one day after completion—buys without implied warranty.

[2]   Although the majority of jurisdictions continue to adhere to the rule of caveat emptor in the sale of residential real estate by a builder-vendor, we feel that the recent trend recognizing implied warranties of fitness and habitability is the better reasoned view. We, therefore, hold that in the sale of a house by a builder-vendor, there is an implied warranty that the house has been or will be completed in an efficient and workmanlike manner and that it will be upon completion suitable for habitation. This implied warranty applies irrespective of the status of the house relative to completion.

Since defendant's assignments of error to the denial of his motions for directed verdict are predicated upon the fact that

the implied warranty of fitness and habitability has not heretofore been recognized in North Carolina, these assignments are overruled. Likewise is the assignment of error to the conclusion that there existed an implied warranty overruled.

Defendant next assigns error to the court's allowing opinion testimony as to the fair market value of the house as well as the expenses incurred by plaintiff in travel and repairs occasioned by the flooding. It is defendant's position that the court misapplied the measure of damages by allowing recovery for both the diminished value of the land and the expenses incurred.

[3]   This position is not well taken. The measure of damages in an action based on breach of warranty is the difference between the fair market value of the article as warranted and as delivered, together with such special damages as were within the contemplation of the parties. *Insurance Co. v. Chevrolet Co.,* 253 N.C. 243, 116 S.E. 2d 780 (1960). Not only must the special damages be within the contemplation of the parties at the time of the making of the contract, they must be properly pleaded. *Price v. Goodman,* 226 N.C. 223, 37 S.E. 2d 592 (1946). Thus, the difference in market value is recoverable in the present case as general damages. It was within the contemplation of the parties at the time of the making of the contract that improper construction could lead to water damage with attendant expenses to the plaintiff. Plaintiff has specifically alleged these expenses —repairs to appliances, cleaning up and painting, air travel and cablegrams, extra heating and air conditioning, and pumping water from the house—and he is therefore entitled to recover for them.

No error.

Judges HEDRICK and VAUGHN concur.