(No. 55100.—

DONALD J. REDAROWICZ, Appellant, v. WILLIAM H. OHLENDORF, Appellee.

*Opinion filed June 18, 1982.*

RYAN, C.J., and UNDERWOOD, J., dissenting.

Heyl, Royster, Voelker & Allen, of Peoria (Timothy L. Bertschy and Gary S. Schwab, of counsel), for appellant.

Costigan & Wollrab, of Bloomington (James P. Ginskey, of counsel), for appellee.

JUSTICE CLARK delivered the opinion of the court:

Plaintiff, Donald J. Redarowicz, filed a four-count complaint against Ohlendorf Builders, Inc., on December 14, 1978, in the circuit court of McLean County. The complaint asserts that the defendant was responsible for faulty construction of the plaintiff's residence. The original complaint sought relief on contract, tort, fraud, and implied warranty of habitability theories.

The defendant moved to dismiss the complaint on March 23, 1979, stating that Ohlendorf Builders, Inc., a corporation, was not in the business of home construction, but was in the business of commercial construction.

On June 18, 1979, the circuit court issued an order granting defendant's motion to dismiss and allowing the plaintiff to amend his complaint to substitute William H. Ohlendorf, doing business as Ohlendorf Builders, as the proper party defendant in the case. The complaint was amended on July 31, 1979.

The defendant again moved to dismiss the action on September 18, 1979. The plaintiff filed an amendment to the complaint on December 21, 1979; on February 14, 1980, another amendment to the complaint was filed. Defendant moved to dismiss for failure to state a cause of action on February 14, 1980. On May 9, 1980, the circuit court entered an order dismissing the cause with prejudice. The case was taken on appeal to the appellate court. On April 24, 1981, the appellate court entered judgment affirming the dismissal of counts I through V. The dismissal of count VI was reversed. (95 Ill. App. 3d 444.) On October 19, 1981, we granted leave to appeal.

The complaint alleges that the defendant builder completed the house in early 1976. The plaintiff purchased the premises from the original owners in April of 1977. At the time the plaintiff purchased the house none of the defects complained of were apparent. Soon thereafter the plaintiff discovered that the chimney and adjoining brick wall were beginning to pull away from the rest of the house. Upon further inspection the plaintiff found that the wall and chimney were set in loose soil and that the supporting lintel was set only 24 inches deep. The plaintiff complains that the basement wall was cracked and there was water leakage in the basement as well as leakage in the roof area around the chimney.

Count I asks recovery for damages in tort for faulty construction of the plaintiff's residence. Count II sounds in contract, asserting the plaintiff to be a third-party beneficiary of the defendant's alleged agreement with the city of Bloomington to remedy certain defects in the

construction in exchange for the city's forgoing prosecution for violation of city building codes. Count III is based upon an implied warranty of habitability and fitness of the residence. Count IV alleges fraud in the defendant's promise to remedy the defects in the construction. Count V is based in tort, alleging faulty construction of a patio. No appeal was taken from the appellate court's judgment reversing the dismissal of count VI; count VI therefore is not at issue.

Counts I and V of the plaintiff's complaint are based in negligence and seek recovery for the costs of repair or replacement of the defectively constructed chimney, wall and patio. The defendant concedes that privity is not a necessary element of a tort action brought in negligence. (See generally *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612.) The measure of liability in a tort action is based rather on the scope of the duty owed to the plaintiff. *Rozny v. Marnul* (1969), 43 Ill. 2d 54.

While it is foreseeable that a house will be sold more than once, and that substandard construction that results in structural defects could harm a subsequent purchaser, we need not discuss in detail the scope of the duty owed to this plaintiff. For it is now clear in view of our decision in *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, that a plaintiff cannot recover solely economic losses in tort. In *Moorman* the plaintiff had purchased a bolted-steel grain-storage tank from the defendant. The tank had developed a crack in one of its steel plates. The plaintiff brought an action alleging in count I that the tank was not reasonably safe due to defects in its design and manufacturing and in count III that the defendant had negligently designed the tank.

We affirmed the trial court's dismissal of both the strict liability and negligence counts in *Moorman*. We concluded that a complaint alleging qualitative defects in

a product does not belong in tort. A disappointed consumer of a storage tank or a disgruntled purchaser of a certain house cannot assert that, due to inferior workmanship that led to eventual deterioration, he can recover under a negligence theory in tort. We find no sound reason to treat either of the aforementioned purchasers differently from one another.

We took note in *Moorman* that " '[e]conomic loss' has been defined as 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits ***' (Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum. L. Rev. 917, 918 (1966) (*Economic Loss*)) as well as 'the diminution in the value of the product because it is inferior in quality ***.' (Comment, *Manufacturers' Liability to Remote Purchasers for 'Economic Loss' Damages—Tort or Contract?* 114 U. Pa. L. Rev. 539, 541 (1966).)" 91 Ill. 2d 69, 82.

To recover in negligence there must be a showing of harm above and beyond disappointed expectations. A buyer's desire to enjoy the benefit of his bargain is not an interest that tort law traditionally protects. (See Prosser, Torts sec. 92, at 613 (4th ed. 1971).) In *Crowder v. Vandendeale* (Mo. 1978), 564 S.W.2d 879, the front porch and steps of the plaintiff's home began to settle and proceeded to separate from the foundation of the house. While the Supreme Court of Missouri recognized an implied warranty of habitability in the new house, the court concluded that recovery for deterioration alone, caused by latent structural defects, was not actionable in negligence. We concur in our sister court's statement:

"A duty to use ordinary care and skill is not imposed in the abstract. It results from a conclusion that an interest entitled to protection will be damaged if such care is not exercised. Traditionally, interests which have been deemed entitled to protection in negligence have been related to *safety* or freedom from physical harm. Thus,

where personal injury is threatened, a duty in negligence has been readily found. Property interests also have generally been found to merit protection from physical harm. However, where mere deterioration or loss of bargain is claimed, the concern is with a failure to meet some standard of *quality*. This standard of quality must be defined by reference to that which the parties have agreed upon." (564 S.W. 2d 879, 882.)

This is not a case where defective construction created a hazard that resulted in a member of the plaintiff's family being struck by a falling brick from the chimney. The adjoining wall has not collapsed on and destroyed the plaintiff's living room furniture. The plaintiff is seeking damages for the costs of replacement and repair of the defective chimney, adjoining wall and patio. While the commercial expectations of this buyer have not been met by the builder, the only danger to the plaintiff is that he would be forced to incur additional expenses for living conditions that were less than what was bargained for. The complained-of economic losses are not recoverable under a negligence theory. The circuit court was correct in dismissing counts I and V of the plaintiff's complaint.

In count II of the complaint the plaintiff seeks relief as a third-party beneficiary of an agreement between the city of Bloomington and the defendant. It is alleged that the city agreed to forgo prosecution of the defendant for certain building code violations existing on the premises of the plaintiff in return for defendant's promise to make certain repairs to plaintiff's home. The defendant contends that the city cannot validly enter into such an agreement because it is tantamount to a decision not to enforce the building code. The defendant fails to recognize that the agreement sought to bring the construction into conformity with the city's building codes in specifying the defects to be remedied at the plaintiff's home. In entering into this agreement with the defendant the city was not attempting to undermine any municipal ordi-

nance; the purpose was to see that the defendant complied with the regulations.

Both the plaintiff and defendant agree that forbearance is recognized in a civil action as valid consideration for a contract. (*White v. Walker* (1863), 31 Ill. 422; *United Factors Division of United Merchants & Manufacturers, Inc. v. Murphy* (N.D. Ill. 1971), 345 F. Supp. 768.) Prosecution for a violation of a municipal ordinance, while quasi-criminal in character, has consistently been classified as a civil action in Illinois. *Johnston v. City of Bloomington* (1979), 77 Ill. 2d 108, 112; *City of Decatur v. Chasteen* (1960), 19 Ill. 2d 204, 216; *City of Danville v. Hartshorn* (1973), 53 Ill. 2d 399, 402; *City of Kewanee v. Puskar* (1923), 308 Ill. 167, 174.

Recognizing, then, the city's forbearance as adequate consideration, the question remains as to whether the plaintiff is a direct and intended beneficiary and can therefore bring suit as a third party to the agreement between the defendant and the city of Bloomington. (*People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381.) The agreement between the city and the defendant specifically enumerates the repairs that are to be undertaken at the plaintiff's home. As a third party to the agreement it is intended that benefits accrue directly to the plaintiff through performance of the contract. Because the identification of the plaintiff as a direct beneficiary is clear, and the intent of the parties to the agreement is unmistakable in indicating as much, the plaintiff is permitted to maintain an action as a third-party beneficiary. (78 Ill. 2d 381, 387; See J. Calamari & J. Perillo, Contracts 380, 383 (1970); *Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 257.) Count II was improperly dismissed.

Count III of the plaintiff's amended complaint alleges that the home was not fit for its residential purpose when constructed. The plaintiff asserts that the defend-

ant builder breached the implied warranty of habitability and asks that the warranty be extended to the plaintiff as a subsequent purchaser.

Buyers of homes have traditionally assumed the burden of inequitable transactions, as the doctrine of *caveat emptor* dominated sales of real property well into the 20th century. Purchasers of dwellings that proved to be defective looked for a breach of contract based upon the failure of the builder to do the job in a workmanlike manner. The notion that the builder was an artisan who was amenable to constant supervision by the owner of the homesite came under severe attack as mass production of homes came to be a common practice in the post-World War II building boom. Roberts, *The Case of the Unwary Home Buyer: The Housing Merchant Did It*, 52 Cornell L.Q. 835, 837 (1967).

The implied warranty of habitability was first recognized in the English case of *Miller v. Cannon Hill Estates, Ltd.* (1931), 2 K.B. 113. The court said that in the purchase of an unfinished house the builder was aware that his buyer intended to live in the house and therefore impliedly warranted that it would be suitable for that purpose. (2 K.B. 113.) In 1957 an Ohio court in *Vanderschrier v. Aaron* (1957), 103 Ohio App. 340, 140 N.E.2d 819, applied the *Miller* rule for the first time in the United States. In 1964 the Colorado Supreme Court extended the implied warranty to a completed house. *Carpenter v. Donohoe* (1964), 154 Colo. 78, 388 P.2d 399.

This court's initial recognition of the implied warranty of habitability was in the landlord-tenant context. (*Jack Spring, Inc. v. Little* (1972), 50 Ill. 2d 351.) The court in *Jack Spring* noted the nature of the current urban housing market, rejected the common law rule that the lessor is not obligated to repair unless he covenants to do so in the lease, and held that the implied warranty of habitability is included in leases to occupants of multi-

ple-unit dwellings. 50 Ill. 2d 351, 367.

By the mid-1970's courts in 24 States had abandoned the doctrine of *caveat emptor* as applied to the sale of new houses. *Cochran v. Keeton* (1971), 287 Ala. 439, 252 So. 2d 313; *Wawak v. Stewart* (1970), 247 Ark. 1093, 449 S.W.2d 922; *Pollard v. Saxe & Yolles Development Co.* (1974), 12 Cal. 3d 374, 525 P.2d 88, 115 Cal. Rptr. 648; *Carpenter v. Donohoe* (1961), 154 Colo. 78, 388 P.2d 399; *Vernali v. Centrella* (Super. Ct. 1970), 28 Conn. Supp. 476, 266 A.2d 200; *Gable v. Silver* (Fla. App. 1972), 258 So. 2d 11; *Bethlahmy v. Bechtel* (1966), 91 Idaho 55, 415 P.2d 698; *Weck v. A:M Sunrise Construction Co.* (1962), 36 Ill. App. 2d 383; *Theis v. Heuer* (1971), 149 Ind. App. 52, 270 N.E.2d 764; *Crawley v. Terhune* (Ky. App. 1969), 437 S.W.2d 743; *Weeks v. Slavick Builders, Inc.* (1970), 24 Mich. App. 621, 180 N.W.2d 503; *Smith v. Old Warson Development Co.* (Mo. 1972), 479 S.W.2d 795; *Schipper v. Levitt & Sons, Inc.* (1965), 44 N.J. 70, 207 A.2d 314; *Hartley v. Ballou* (1974), 20 N.C. App. 493, 201 S.E.2d 712; *Jones v. Gatewood* (Okla. 1963), 381 P.2d 158; *Yepsen v. Burgess* (1974), 269 Or. 635, 525 P.2d 1019; *Elderkin v. Gaster* (1972), 447 Pa. 118, 288 A.2d 771; *Padula v. J.J. Deb-Cin Homes, Inc.* (1973), 111 R.I. 29, 298 A.2d 529; *Rutledge v. Dodenhoff* (1970), 254 S.C. 407, 175 S.E.2d 792; *Waggoner v. Midwestern Development Inc.* (1967), 83 S.D. 57, 154 N.W.2d 803; *Humber v. Morton* (Tex. 1968), 426 S.W.2d 554; *Rothberg v. Olenik* (1970), 128 Vt. 295, 262 A.2d 461; *House v. Thornton* (1969), 76 Wash. 2d 428, 457 P.2d 199; *Tavares v. Horstman* (Wyo. 1975), 542 P.2d 1275.

This court addressed the issue of an implied warranty of habitability in the sale of new homes by the builder-vendor in *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31. The court reasoned that the skill and integrity of the builder-vendor is relied upon by the

purchaser who is not capable of making a meaningful inspection of the house. The court recognized that the purchaser does not stand on equal footing with the builder-vendor and that the doctrine of *caveat emptor* was based "on reasons founded in antiquity." (76 Ill. 2d 31, 38.) To eliminate the effect of the doctrine of merger, whereby all provisions of the contract of sale become merged in the deed, the court held that the implied warranty of habitability "exists as an independent undertaking collateral to the covenant to convey. \*\*\*. It is implied as a separate covenant \*\*\* and survives the delivery of the deed." (76 Ill. 2d 31, 41.) In defining the scope of the warranty the court found that the house must be reasonably suited for its intended use and not simply inhabitable.

By 1980 at least 35 State courts had afforded some measure of protection for purchasers of new homes by implying some form of a warranty of habitability. Shedd, *The Implied Warranty of Habitability: New Implications, New Applications,* 8 Real Estate L.J. 291, 308, 316 (1980).

We have addressed the issue of implied warranty of habitability in new homes most recently in *Park v. Sohn* (1982), 89 Ill. 2d 453. There the defendant asserted that the warranty of habitability applied only to mass producers of new houses. We found that the defendant need not be a full-time professional builder. He had built one house prior to construction of the one at issue and subsequently built six more.

The defendants in *Park v. Sohn* completed building the house in the summer of 1975 and lived in the house before it was sold in October of 1976. We determined that the residence in *Park v. Sohn* was "new" and was encompassed within the warranty of habitability in the sale of new houses. We said that "whether the house is new for the purposes of the issue of a warranty is a

question of fact to be determined on a case-to-case basis" (89 Ill. 2d 453, 463), reasoning that "[t]o hold that the warranty was not in effect simply because the defendants had occupied it for a time would provide builders with a simple artifice for avoiding the warranty" (89 Ill. 2d 453, 463).

The warranty of habitability is a creature of public policy. (*Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 41, 43.) It is a judicial innovation that has evolved to protect purchasers of new houses upon discovery of latent defects in their homes. While the warranty of habitability has roots in the execution of the contract for sale (76 Ill. 2d 31, 43), we emphasize that it exists independently (76 Ill. 2d 31, 41). Privity of contract is not required. Like the initial purchaser, the subsequent purchaser has little opportunity to inspect the construction methods used in building the home. Like the initial purchaser, the subsequent purchaser is usually not knowledgeable in construction practices and must, to a substantial degree, rely upon the expertise of the person who built the home. If construction of a new house is defective, its repair costs should be borne by the responsible builder-vendor who created the latent defect. The compelling public policies underlying the implied warranty of habitability should not be frustrated because of the short intervening ownership of the first purchaser; in these circumstances the implied warranty of habitability survives a change of hands in the ownership. The defendant's reliance upon *Hunt v. Blasius* (1978), 74 Ill. 2d 203, here is misplaced. The decision in *Hunt* addressed the question of an independent contractor's liability in tort to a third party for personal injuries. The warranty of habitability was not at issue.

Since 1979, supreme courts in three of our sister States have joined the State of Indiana (*Barnes v. Mac Brown & Co.* (1976), 264 Ind. 227, 342 N.E.2d 619) in

extending the implied warranty of habitability to subsequent purchasers. (*Terlinde v. Neely* (1980), 275 S.C. 375, 271 S.E.2d 768; *Moxly v. Laramie Builders, Inc.* (Wyo. 1979), 600 P.2d 733; *Elden v. Simmons* (Okla. 1981), 631 P.2d 739.) In extending the implied warranty the Supreme Court of South Carolina aptly observed:

> "Common experience teaches that latent defects in a house will not manifest themselves for a considerable period of time, likely as alleged in this case, after the original purchaser has sold the property to a subsequent unsuspecting buyer. Furthermore, the character of society has changed such that the ordinary buyer is not in a position to discover hidden defects in a structure \*\*\*. The fact that the subsequent purchaser did not know the home builder, as did the original purchaser, does not negate the reality of the 'holding out' of the builder's expertise and reliance which occurs in the market place." *Terlinde v. Neely* (1980), 275 S.C. 395, 398, 271 S.E.2d 768, 769.

Extending the implied warranty to subsequent buyers is also consistent with the Uniform Land Transactions Act, which was adopted by the National Conference of Commissioners on Uniform State Laws on August 7, 1975 (13 Unif. Laws Ann. 615 (1980)). Section 2—312 of the Act provides that a subsequent purchase carries with it an assignment of the seller's warranty of quality rights to the buyer. It states in pertinent part:

> "Section 2—312. (*Third Party Beneficiaries and Assignment of Warranty*)
>
> (a) A seller's warranty of title extends to the buyer's successors in title.
>
> (b) Notwithstanding any agreement that only the immediate buyer has the benefit of warranties of quality with respect to the real estate, or that warranties received from a prior seller do not pass to the buyer, a conveyance of real estate transfers to the buyer all warranties of quality made by prior sellers. However, any rights the seller has against a prior seller for loss incurred before the conveyance may be reserved by the seller ex-

pressly or by implication from the circumstances." 13 Unif. Laws Ann. 615 (1980).

We agree with the Supreme Court of Wyoming that the purpose of the implied warranty is to protect innocent purchasers and "any reasoning which would arbitrarily interpose a first buyer as an obstruction to someone equally as deserving of recovery is incomprehensible." *Moxly v. Laramie Builders, Inc.* (Wyo. 1979), 600 P.2d 733, 736.

Our holding today in extending the implied warranty of habitability from builder-vendors to subsequent purchasers is limited to latent defects which manifest themselves within a reasonable time after the purchase of the house. The subsequent purchaser should not be denied the protection of the warranty of habitability because he happened to purchase the home about one year after the original buyer. We are an increasingly mobile people; a builder-vendor should know that a house he builds might be resold within a relatively short period of time and should not expect that the warranty will be limited by the number of days that the original owner chooses to hold onto the property. The purpose of the warranty is to protect purchasers' expectations by holding builder-vendors accountable; we do not believe it is logical to arbitrarily limit that protection to the first purchaser of a new house. Count III of the plaintiff's complaint, based upon an implied warranty of habitability, should not have been dismissed.

Count IV of plaintiff's amended complaint pleads a cause of action based in fraud. It alleges that the defendant's failure to abide by an agreement made with the city of Bloomington to make certain repairs to the plaintiff's house constituted an act of fraud upon the plaintiff.

A complaint in fraud must allege that a false statement of material fact was made, that the party making the statement knew or believed it to be untrue, that the party to whom the statement was made had a right to

rely on it and did so, that the statement was made for the purpose of inducing the other party to act, and that reliance by the person to whom the statement was made led to his injury. *Davis v. Nehf* (1973), 14 Ill. App. 3d 318; *Lincolnland Properties, Inc. v. Butterworth Apartments, Inc.* (1978), 65 Ill. App. 3d 907; 37 C.J.S. *Fraud* sec. 3 (1943).

The plaintiff fails to allege that the representations concerning repairs to be made by the defendant were made with an intent on the part of the defendant to induce action on the plaintiff's part. In failing to allege an intent to defraud, count IV is missing an essential element needed to state a cause of action for fraudulent misrepresentation. (*Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 286; *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 332, 333; *Roth v. Roth* (1970), 45 Ill. 2d 19, 23; *Roda v. Berko* (1948), 401 Ill. 335, 340.) Since there is no allegation that the defendant made the misrepresentations to induce the plaintiff to act, count IV fails. It was properly dismissed.

In sum, we affirm the appellate court's judgment that counts I, IV and V of the amended complaint were properly dismissed by the circuit court. We reverse the judgment of the appellate court upholding the circuit court's dismissal of counts II and III. Counts II and III should not have been dismissed. The judgment of the circuit court of McLean County is affirmed except as to the dismissal of counts II and III. The cause is remanded to the circuit court for further proceedings consistent with this opinion.

*Appellate court affirmed in part and reversed in part; circuit court affirmed in part and reversed in part; cause remanded.*

CHIEF JUSTICE RYAN, dissenting:

I cannot support the fiction indulged in by my col-

leagues in the purported extension of the implied warranty of habitability concept which this court originally announced in *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31. The decision in *Petersen* was based on a contract theory, implying a contract between the builder-vendor and his vendee. My colleagues, in the case before us, by abolishing the privity requirement, have transferred what was conceived in *Petersen* as a contract action into an action in tort in the nature of strict liability. Calling this action an implied warranty action is a mere fiction to circumvent our recent decision in *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, which held that recovery for economic loss cannot be had under strict liability in tort. If it is the desire to permit the recovery for economic loss in a strict liability tort action, why do we not simply so hold?

Implied warranty without privity is essentially strict liability in tort. Historically, the tort of strict liability evolved from the contract action based on implied warranty. Prior to 1960 such an action included the requirement of privity. In that year, however, the Supreme Court of New Jersey, in *Henningsen v. Bloomfield Motors, Inc.* (1960), 32 N.J. 358, 161 A.2d 69, indulged in the same fiction the majority of this court now uses, and held that recovery in a products liability case could be had on the theory of implied warranty and privity was no longer required. (See Prosser, *The Fall of the Citadel (Strict Liability to the Consumer)* 50 Minn. L. Rev. 791 (1966).) However, in 1963 the Supreme Court of California, in *Greenman v. Yuba Power Products, Inc.* (1963), 59 Cal. 2d 57, 377 P.2d 897, 27 Cal. Rptr. 697, wiped away the last vestiges of a contract action in a products liability case. The court in that case in effect stated that it should stop indulging in such fictions and call this action what it really is, an action for strict liability in tort. Being an action in tort, privity was not a prerequi-

site to recovery. Soon, many States abandoned the fiction of implied warranty without privity and adopted the principle of strict liability in tort. (See Prosser, Torts secs. 81, 96-104 (4th ed. 1971).) In 1965 this State abandoned the fiction in favor of strict liability in tort. *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612.

Now, in the case before us, the fiction of implied warranty without privity has been resurrected. A fiction once abandoned has been exhumed and commissioned to provide recovery for economic loss where such recovery cannot otherwise be obtained. Henceforth, this fiction will be called upon to perform that function as a second count sounding in contract in every strict liability in tort action. Henceforth, there will be no restriction on the recovery of economic loss in strict liability in tort actions. If that is the intent of the majority, why indulge in the fiction to achieve it?

JUSTICE UNDERWOOD joins in this dissent.