**TEST DRILLING SERVICE CO., Plaintiff,**

v.

**The HANOR COMPANY, et al., Defendants.**

No. 03–3063.

United States District Court, C.D. Illinois, Springfield Division.

June 24, 2004.

William S. Thomas, Rabbitt Pitzer & Snodgrass, St. Louis, MO, for Plaintiff.

Edward W. Dwyer, Thomas G. Safley, Hodge Dwyer & Zeman, Springfield, IL, for Hanor Co.

Robert E. Gillespie, John E. Nolan, Raylene D. Grischow, Hinshaw & Culbertson, Springfield, IL, for Pig Improvement and Agri–Waste Technology.

Richard F. Clough, Anne Clough, McDonald Strickland & Clough, Carrollton, IL, J. Michael Grier, Christopher K. Snow, Warden Triplett Grier, Overland Park, KS, for Terracon.

Kenneth A. Slavens, Samuel M. Wendt, Brown & James, St. Louis, MO, for Envirotech Engineering.

Daniel C. Murray, William A. Geiser, Keith L. Gibson, Johnson & Bell, Chicago, IL, for GSE Lining.

Curt J. Schlom, Daniel Tranen, Wilson Elser Moskowitz Edelman & Dicker, Chicago, IL, for Hog Slat.

### ORDER

SCOTT, District Judge.

This matter comes before the Court on five separate Motions for Partial Summary Judgment filed by the various Defendants. Plaintiff alleges claims for negligence against each Defendant. This action was removed to this Court from the Circuit Court of the Seventh Judicial Circuit, Greene County, Illinois. Removal was appropriate because of diversity of citizenship of the parties. *See May 28, 2003 Order*, (d/e 17). The Motions for Partial Summary Judgment are filed by: (1) The Hanor Company, Inc. (Hanor) (d/e 109), which Motion is joined by Terracon Consultants, Inc. (Terracon) and GSE Lining Technology, Inc. (GSE Lining); (2) Pig Improvement Co., Inc. (PIC) (d/e 113); (3) Agri-waste Technology, Inc. (Agri-waste) (d/e 114); (4) Envirotech Engineering & Consulting, Inc. (Envirotech) (d/e 118); and (5) Hog Slat Inc. (Hog Slat) (d/e 110), which Motion is also joined by GSE Lin-

ing. For the reasons stated below, each one of the Motions for Partial Summary Judgment is allowed in part and denied in part.

### BACKGROUND

It is undisputed that in 1994, Plaintiff Test Drilling Service Co. (TDSCO) entered into three separate oil and gas leases covering property located in Greene County, Illinois. Each lease contained the following provision:

1. Lessor, for and in consideration of Ten Dollars ($10.00), in hand paid, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of Lessee, has granted, demised, leased and let and by these presents does grant, demise, lease and let, exclusively unto Lessee for the purpose of exploring by geophysical and other methods, drilling and operating for and producing oil, liquid hydrocarbons, all gases, and their constituent products, injecting gas, waters, other fluids and air into subsurface strata, including the further right to inject water from other wells on adjoining lands and within the field of development, laying pipelines, storing oil, building tanks, electric transmission lines, ponds, powers, roads and structures thereon to produce, save, take care of, treat, process, store and transport said oil, liquid hydrocarbons, gases, and their constituent products, together with the right of ingress and egress thereto on to other land under lease to Lessee, the following described land in Greene County, State of Illinois, to wit: [description of property]. It is intended hereby to include herein all lands and interest therein contiguous to or pertinent to the above described land and owned or claimed by Lessor. For the purpose of making any payment based on acreage, said land and its constituent

parcels shall be deemed to contain the acreage above stated whether they actually contain more or less. This lease shall cover all the interest in said land now owned by or hereafter vested in Lessor, even though greater than the undivided interest (if any) described above.

*Agri–Waste Motion for Partial Summary Judgment, Ex. A.* ¶ 1. Each lease also provided that:

Subject to the other provisions herein contained, this lease shall remain in force for a term of Two (2) years from this date (called "primary term"), and as long thereafter as oil, liquid hydrocarbons, gas or their respective constituent products, or any of them is produced from said land or land with which said land is pooled....

*Id.,* ¶ 2.

If operations for drilling are not commenced on said land or on land pooled therewith on or before one (1) year from this date, this lease shall terminate as to both parties, unless on or before one (1) year from this date lessee shall pay or tender to the lessor a rental of *One Hundred Eighty Dollars* Dollars [sic] (*$180* ) which shall cover the privilege of deferring commencement of such operations for a period of twelve (12) months. In like manner and upon like payments or tenders, annually the commencement of said operations may be further deferred for successive periods of the same number of months, each during the primary term....

*Id.,* ¶ 4.

Apparently the leases were still in effect in September/October 2000. TDSCO alleges that prior to October 2000, there was absolutely no evidence of contamination in any of the oil samples obtained from the property subject to the agreements. TDSCO began to remove oil in September 2000. In October 2000, TDSCO discovered that the oil was contaminated by bacteria and microbes of the kind found in animal and livestock waste products. The discovery of contaminants "rendered the entire quantity of oil extracted and existing in-situ and subject to the oil and gas mineral rights agreements unsaleable, unusable and absolutely worthless." *First Amended Compl.,* (Compl.) ¶ 15. The contaminant has rendered the oil subject to the oil and gas agreements unsaleable and ruined the entire oil deposits in the area. *Id.* ¶ 17. The contaminant in the oil also caused TDSCO's pumping and storage equipment to become damaged and unusable. *Id.* ¶ 16.

Each of the Defendants was or is involved in the design, construction, maintenance, and/or operation of hog confinement facilities adjacent to the land subject to TDSCO's oil and gas agreements. TDSCO claims that each Defendant "allowed leachate and animal waste to escape the confines of the commercial hog confinement facility and flow into plaintiff's mineral rights." *Id.* ¶¶ 73, 102, 132, 162, 192, 222, 252, 282, 312. TDSCO alleges that Defendants' failure to control leachate and animal waste caused it to sustain loss and permanent damage to property, including its mineral rights, and damage to its operation and equipment.[1]

TDSCO's Complaint consisted of two counts against each Defendant. The first count alleged negligence, and the second count alleged negligence per se. TDSCO sought the following damages: (a) costs incurred for the repair and restoration of TDSCO's property to restore it to its origi-

---

**1.** For purposes of these Motions, TDSCO's factual claims and allegations are not contested.

nal condition; (b) a sum of money that represents the diminution in the market value; (c) a sum of money in compensation for the lost mineral rights of TDSCO's property; and (d) a sum of money for the loss of commercial use of TDSCO's property. On November 25, 2003, this Court dismissed each of the negligence per se claims against each Defendant *See November 25, 2003 Order,* (d/e 89).

Defendants now move for partial summary judgment on the remaining negligence counts. They claim that any damages to the oil or to TDSCO's commercial expectations are barred by the economic loss doctrine set forth in *Moorman Manufacturing Company v. National Tank Company,* 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (Ill.1982).

## SUMMARY JUDGMENT STANDARD

Summary judgment shall be entered if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R.Civ.P.* 56(c). At summary judgment, Defendants must present evidence which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must consider the evidence presented in the light most favorable to TDSCO. Any doubt as to the existence of a triable issue of fact must be resolved against Defendants. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once Defendants have produced evidence showing that they are entitled to summary judgment, TDSCO must present evidence to show that issues of fact remain. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 576, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Illinois substantive law applies to TDSCO's remaining negligence claims, since the alleged tortious acts occurred in Illinois, and the real estate subject to the oil and gas leases is located in Illinois.

## ANALYSIS

### A. Moorman Economic Loss Rule

Under Illinois law, economic damages are not recoverable in a tort action. *Moorman,* 91 Ill.2d at 69, 61 Ill.Dec. 746, 435 N.E.2d at 443. Under this doctrine, economic loss is defined as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—*without any claim of personal injury or damage to other property.* ..." *In re Chicago Flood Litigation,* 176 Ill.2d 179, 223 Ill.Dec. 532, 680 N.E.2d 265, 274 (1997), *quoting Moorman,* 91 Ill.2d at 82, 61 Ill.Dec. 746, 435 N.E.2d 443 (emphasis added in *In re Chicago Flood Litigation* opinion).

However, one exception to the economic loss rule is when the plaintiff sustained damage, such as "personal injury or property damage resulting from a sudden or dangerous occurrence." *Id.* at 275. Thus, the economic loss rule barring recovery in tort "applies even to plaintiffs who have incurred physical damage to their property if the damage is caused by disappointed commercial expectation, gradual deterioration, internal breakage, or other nonaccidental causes, rather than a dangerous event." *Id.* Even if there were a sudden, dangerous, or calamitous occurrence, the plaintiff must allege personal injury or property damage resulting from it to avoid a bar to recovery by the economic loss rule. *Id.* "To recover in negligence there must be a showing of harm above and beyond disappointed expectations." *Id.* at 276, *quoting Redarowicz v.*

*Ohlendorf,* 92 Ill.2d 171, 177, 65 Ill.Dec. 411, 441 N.E.2d 324 (Ill.1982).

Defendants have previously moved to dismiss the negligence counts as barred by the *Moorman* economic loss doctrine. In denying the motions to dismiss, this Court stated the following:

> TDSCO alleges that it suffered damage to its property, including its pumping equipment as well as to its mineral rights.... It is ambiguous from the language of the Complaint whether TDSCO possesses an ownership interest in the oil and mineral rights, or whether it possesses a contractual interest to drill for oil on the property. The Court must view all ambiguities in a light most favorable to TDSCO, and thus assumes TDSCO had an ownership interest in the oil and mineral rights, and that property right was injured. If in fact TDSCO only possessed a contractual right to drill for oil on the property, without any property interest in the mineral rights, then any recovery would be limited to damage to TDSCO's equipment. Recovery for any lost profits arising from damage to the oil caused by the alleged contamination would be barred under *Moorman* and *In re Chicago Flood Litigation.*

*November 25, 2003 Order,* p. 9. Therefore, the issue currently before the Court is, in light of the oil and gas agreements in evidence, whether TDSCO had a property interest which was injured by a sudden or dangerous act for which Defendants are responsible.

**B.  *TDSCO's Property Interest Pursuant to Illinois Oil and Gas Law***

■  TDSCO had a property interest in the mineral rights at issue here. "Oil and gas leases granting the right to search for and take oil and gas are freehold estates in the land." *Jilek v. Chicago, Wilmington & Franklin Coal. Co.,* 382 Ill. 241, 246, 47 N.E.2d 96, 98 (Ill.1943). "An oil and gas lease, in effect, transfers the mineral estate to the lessee by conveying to the lessee the right to enter the land for exploration purposes and reduce to possession any oil or gas located beneath the land. When this right is granted for an indefinite term, the working interest in an oil and gas lease constitutes a freehold estate in real property." *Matter of Fullop,* 6 F.3d 422, 427 (7th Cir.1993) *citing Fry v. Farm Bureau Oil Co.,* 3 Ill.2d 94, 119 N.E.2d 749, 750 (Ill.1954).

In this case, the leases authorized TDSCO to come onto the property to produce and explore for oil. The leases were in effect for two years, "and as long thereafter as oil, liquid hydrocarbons, [or] gas ... is produced from said land...." *Agri–Waste Motion for Partial Summary Judgment, Ex. A.,* ¶ 2. Accordingly, the language used indicates the leases were of an unlimited duration and conveyed to TDSCO a freehold interest in the property. *See Greer v. Carter Oil Co.,* 373 Ill. 168, 174, 25 N.E.2d 805, 808 (1940) (oil and gas lease with term of three years, or as long as oil and gas is produced, granted a freehold estate), *Poe v. Ulrey,* 233 Ill. 56, 84 N.E. 46 (1908) (lease for term of five years, or as long as oil or gas is found in paying quantities, was a lease of unlimited duration). Thus, TDSCO's freehold estate in the mineral rights was a cognizable interest in real property. *Fullop,* 6 F.3d at 427. Under Illinois law and under the terms of the oil and gas leases, TDSCO did have a property interest in the mineral estate.

■  TDSCO's allegations support the inference that TDSCO's property interest had a greater value prior to the contamination than it had after the contamination occurred. Any such reduction in value of TDSCO's freehold estate in the mineral rights is property damage allegedly caused by a dangerous occurrence. Such damage

to the freehold estate itself is property damage above and beyond disappointed commercial expectations and is not barred by the economic loss rule set forth in *Moorman* and *In re Chicago Flood Litigation.*[2] TDSCO's damages are measured by the reduction in value of TDSCO's real property interest conveyed by the leases, or the cost of repair to the mineral estate, whichever is less. *Matich v. Gerdes,* 193 Ill.App.3d 859, 865, 140 Ill.Dec. 737, 550 N.E.2d 622, 625 (1990) *citing Williams–Bowman Rubber Co. v. Industrial Maintenance, Welding and Machining Co.,* 677 F.Supp. 539 (N.D.Ill.1987)(proper measure of damages "is the diminution in market value of the real estate, except when the damages are only partial and repairs are reasonably priced"). Damages measured by the lost value of the oil produced, and any lost profits associated with the anticipated sale of that oil, are not *per se* recoverable (see below). However, the lost value of that produced oil may be relevant to a determination of the loss of value in TDSCO's freehold estate in the mineral rights (or the cost of repair).

This position is supported by *Redarowicz.* In *Redarowicz,* a homeowner sued the builder of his home because of the faulty construction of the home. The chimney and adjoining brick wall began to pull away from the house. The court applied *Moorman* and found that the cost and repair of the chimney, wall and patio were economic losses unrecoverable in tort. *Redarowicz,* 92 Ill.2d at 178, 65 Ill. Dec. 411, 441 N.E.2d 324. The court noted that, "This is not a case where defective construction created a hazard that resulted in a member of the plaintiff's family being struck by a falling brick from the chimney. The adjoining wall has not collapsed on and destroyed the plaintiff's living room furniture." *Id.* Such damages would be recoverable in tort.

The damage to TDSCO's real property interest is analogous to the damage to the living room furniture caused by a falling wall and recoverable in tort. Plaintiff's claims are that Defendants negligently constructed the hog waste product containment facility in such a way that a hazard was created—allowing hog waste product to escape and flow into and damage TDSCO's freehold estate in the mineral rights as well as TDSCO's drilling equipment. These claims are not barred by *Moorman* because they constitute damage to property (real and personal).

C. *Moorman bars recovery for damage to the oil existing in the ground, and any lost profits from the anticipated sale of that oil*

■ TDSCO can only recover for the damage to its freehold estate. TDSCO cannot recover for the damage to the oil in and of itself because it had no property interest in the oil in the ground. The party holding a freehold interest in the mineral rights does not have title to the oil in the ground; title passes when the oil is produced. Under Illinois law:

A lease of land to enter and prospect for oil or gas is a grant of a privilege to enter and prospect, but does not give a title to the oil or gas until such products are found. In the eye of the law oil and natural gas are treated as minerals, but they possess certain peculiar attributes

---

**2.** In their Replies, Hog Slat and Hanor each contend that since TDSCO is no longer producing oil, the interest in the leases has expired. TDSCO's Complaint alleges that the injury occurred at the time it was producing oil, and if this is true, then TDSCO had a freehold interest when the contamination occurred. Defendants cannot cause injury to TDSCO which forces TDSCO to cease production of oil, but then claim that TDSCO had no property interest at the time of the injury. Recovery for this property damage is available.

not common to other minerals which have a fixed and permanent situs. Owing to their liability to escape, these minerals are not capable of distinct ownership in place. Oil and gas, while in the earth, unlike solid minerals, cannot be the subject of a distinct ownership from the soil. A grant to the oil and gas passes nothing which can be the subject of an ejectment or other real action. It is a grant, not of the oil that is in the ground, but to such part thereof as the grantee may find.

*Watford Oil & Gas Co. v. Shipman,* 233 Ill. 9, 12–13, 84 N.E. 53, 54 (Ill.1908), *see also Triger v. Carter Oil Co.,* 372 Ill. 182, 185, 23 N.E.2d 55, 56 (Ill.1939). Oil and gas belong to the "owner of the land only so long as they remain under the land, and if the owner makes a grant of them to another, it is a grant only of the oil and gas that the grantee takes from the land." *Pawnee Oil & Gas, Inc. v. County of Wayne,* 323 Ill.App.3d 426, 428, 256 Ill. Dec. 431, 751 N.E.2d 1268, 1269 (2001) *citing Triger,* 372 Ill. at 185, 23 N.E.2d 55. "Oil and gas are incapable of ownership until actually found and produced." *Id.*

Since TDSCO did not yet own the oil itself that was in the earth (because it had not been produced), the diminished value of that oil once produced would only be economic loss. That damage is in the form of disappointed commercial expectations. Such damages are barred by the economic loss rule set forth in *Moorman.* Damages in the form of profits TDSCO expected to make from the sale of the oil are also barred by *Moorman.* These economic damages are barred even though TDSCO also alleges property damage, such as damage to its equipment and to its mineral estate. TDSCO is not allowed to bootstrap a tort claim for economic damages simply because it has also suffered other separate property damage. *See Vacuum Indus. Pollution, Inc. v. Union Oil Co. of California,* 764 F.Supp. 507 (N.D.Ill.1991).

THEREFORE, for the above stated reasons, each Defendant's Motion for Partial Summary Judgment (d/e 109, 110, 113, 114, and 118) is ALLOWED, IN PART. TDSCO is barred from recovering damages for any lost profits associated with the anticipated sale of oil. However, the economic loss rule does not bar TDSCO from recovering for the diminution in value of its freehold estate in the mineral rights. The projected lost profits from the oil production may be relevant to the determination of the diminution in value of the mineral estate, but those profits are not recoverable separately as an independent element of damages. TDSCO may also seek an award for damage to its equipment.

IT IS THEREFORE SO ORDERED.