Sixth Division

September 30, 1997

No. 1-95-2897

NBD BANK, as Trustee under Trust       )  Appeal from the Circuit

No. 4172-HP, Successor in Interest     )  Court of Cook County

to NBD Trust Company of Illinois,      )

as Trustee under Trust No. 4172-HP,    )

Successor in Interest to First         )

National Bank of Highland Park,        )

under Trust No. 4172, and              )

KLAIRMONT ENTERPRISES, INC.,           )

Beneficiary of NBD Bank Trust          )

No. 4172-HP, Successor in              )

Interest to NBD Trust Company of       )  No. 93 L 09530

Illinois, as Trustee under Trust       )

No. 4172-HP, Successor in Interest     )

to First National Bank of Highland     )

Park, under Trust No. 4172,            )

                                       )

Plaintiffs-Appellants,            )

                                       )

v.                           )

                                       )

KRUEGER RINGIER, INC.,                 )  Honorable

                                       )  David Lichtenstein,

Defendant-Appellee.               )  Judge Presiding.

JUSTICE ZWICK delivered the opinion of the court:

Plaintiffs brought this action in tort to recover their costs incurred investigating, cleaning, removing and restoring petroleum contaminated soil on a parcel of land purchased from defendant, Krueger Ringier, Inc., (Krueger).  Defendant filed a motion to dismiss plaintiffs' claims pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 1996)).  The trial court dismissed plaintiffs' action with prejudice, ruling, 
inter
 
alia
, that the tort-based recovery sought by plaintiffs consisted of damages for "economic loss" and was precluded by the supreme court's decision in 
Moorman Manufacturing Co. v. National Tank Co.
, 91 Ill. 2d 69, 435 N.E.2d 443 (1982).  Plaintiffs have appealed the dismissal of their claims, asserting that (1) the doctrine enunciated in 
Moorman
 does not bar their recovery and (2) liability should be imposed upon defendant as a matter of public policy.

On or about August 19, 1986, plaintiffs entered into a real estate sales contract with defendant for the purchase of certain real property, consisting of approximately 1,000,000 square feet, which was then commonly known as the Hall Printing Plant, on which defendant had conducted a commercial printing business.  The subject property consisted of two distinct parcels of land, one of which was located north of Diversey Avenue at approximately 4600 West and was improved with various industrial buildings which contained certain items of printing equipment.  The second parcel consisted of an unimproved lot situated immediately south of Diversey Avenue, also at approximately 4600 West.

Defendant had ceased its printing operation and vacated the premises sometime before August 19, 1986.  Prior to the execution of the real estate sales agreement, the owner of the beneficial interest of plaintiffs' land trust walked through the property and conducted a visual inspection.  The parties closed the real estate transaction on December 22, 1986.

In late 1990, plaintiffs discovered the existence of contamination to the underground soil on the unimproved lot located on the south side of Diversey Avenue.  Waste water was removed from the subsurface of the lot in December 1990, and a sludge mixture was reclaimed from the subsurface in  late 1991.  Plaintiffs thereafter learned that the contamination possibly resulted from a petroleum-based substance which had leaked from ruptured underground storage tanks on the unimproved lot.  In July 1993, plaintiffs discovered that a petroleum-based substance from the underground storage tanks had contaminated the soil beneath surface.

Plaintiffs filed suit in August 1993, claiming that defendant was liable to them based upon the contaminated condition of this unimproved lot.  Plaintiffs' complaint, as finally amended, consisted of three counts and sought damages in excess of $30,000 as recovery for costs incurred "in the inspection and testing of subsoil, reclamation, removal of the tanks and in attempting to reach a corrective measure so as to return the soil[,] both the subsurface and surface[,] to a safe condition."  In Count I of the complaint, plaintiffs alleged that defendants were liable under section 353 of the Restatement (Second) of Torts, "Undisclosed Dangerous Conditions Known to Vendor."  Restatement (Second) of Torts §353 (1965).  Count II merely incorporated by reference the substantive allegations in Count I and alleged that plaintiffs' "injuries and damages [were] a direct and proximate result of [d]efendant's *** actions."  In Count III, plaintiffs again incorporated by reference the substantive allegations in Count I and asserted that, as a matter of public policy, defendant should be held liable for the cost of removing the underground storage tanks, abatement of the resulting contamination and reclamation of the soil.  The trial court dismissed plaintiffs' complaint with prejudice, and plaintiffs have appealed.

We initially address plaintiffs' claim that the trial court erred in applying the 
Moorman
 doctrine so as to preclude recovery under section 353 of the Restatement (Second) of Torts.  Restatement (Second) of Torts §353 (1965).

In general, a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession.  See Restatement (Second) of Torts §352 (1965).  This principle reflects the doctrine of 
caveat
 
emptor
, which mandates that, in a real estate transaction, the deed of conveyance represents the full agreement of the parties and excludes all other terms and liabilities.  See 
Heider v. Leewards Creative Crafts, Inc.
, 245 Ill. App. 3d 258, 275, 613 N.E.2d 805 (1993).

However, this general rule of nonliability is subject to the following exception set forth in section 353:

"(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if

(a) the vendee does not know or have reason to know of the condition or the risk involved, and

(b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk."  Restatement (Second) of Torts § 353 (1965).

Sections 352 and 353 of the Restatement have both been adopted as the law in Illinois.  See 
Rowe v. State Bank
, 125 Ill. 2d 203, 215, 531 N.E.2d 1358 (1988); 
Century Display Manufacturing Corp. v. D. R. Wager Construction Co.
, 71 Ill. 2d 428, 433, 376 N.E.2d 993 (1978); 
Sparling v. Peabody Coal Co.
 59 Ill. 2d 491, 494, 322 N.E.2d 5 (1974).

In order to recover under section 353, the plaintiff must establish that the defendant concealed or failed to disclose a condition which, prior to the sale, created an unreasonable risk to persons on the land; the defendant knew or had reason to know of the condition and realized or should have realized the risk involved; the defendant had reason to believe that the plaintiff would not discover the condition; the condition caused physical harm, after plaintiff took possession but before plaintiff knew or had reason to know of the condition and the risk involved and before plaintiff had an opportunity to take precautions to prevent the injury.  Restatement (Second) of Torts § 353 (1965).

Prosecution of a claim under section 353 constitutes an action sounding in tort.  Accordingly, any claim brought pursuant to this section is subject to the "economic loss doctrine" enunciated in 
Moorman
.

At common law, purely economic losses are generally not recoverable in tort actions, except (1) where the plaintiff has sustained personal injury or property damage resulting from a sudden or dangerous occurrence (
Moorman
, 91 Ill. 2d at 86), (2) where the plaintiff's damages are the proximate result of a defendant's intentional, false representation (fraud) (
Moorman
, 91 Ill. 2d at 88-89), or (3) where the plaintiff's damages are a proximate result of a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions (
Moorman
, 91 Ill. 2d at 89).  See 
Trans State Airlines v. Pratt & Whitney Canada, Inc.
, 177 Ill. 2d 21, 26-27, 682 N.E.2d 45 (1997); 
In re Chicago Flood Litigation
, 176 Ill. 2d 179, 199, 680 N.E.2d 265 (1997).  We find that none of these exceptions apply in the case at bar.

"`Economic loss' has been defined as inadequate value, costs of repair and replacement of the defective product, and  consequent loss of profits, without any claim for personal injury or damage to other property *** [citation] as well as `the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.' [citation]."  
Moorman
, 91 Ill. 2d at 82.

This doctrine is premised upon the theory that tort law affords a remedy for losses occasioned by personal injuries or damage to one's property, but contract law and the Uniform Commercial Code offer the appropriate remedy for economic losses occasioned by diminished commercial expectations not coupled with injury to person or property.  
In re Chicago Flood Litigation
, 176 Ill. 2d at 200, quoting 
In re Illinois Bell Switching Station Litigation
, 161 Ill. 2d 233, 241, 641 N.E.2d 440 (1994), citing 
Moorman
, 91 Ill. 2d at 86.  The proper test for distinguishing between recovery in tort and contract damages (economic losses) depends upon the nature of the defect and the manner in which the damage occurred.  
Trans State Airlines
, 177 Ill. 2d at 34-35; 
Moorman
, 91 Ill. 2d at 82.

The economic loss doctrine is applicable to litigation predicated upon a real estate transaction.  
Redarowicz v. Ohlendorf
, 92 Ill. 2d 171, 176, 441 N.E.2d 324 (1982).  To recover in tort, there must be a showing of harm above and beyond disappointed expectations.  
Redarowicz
, 92 Ill. 2d at 177.  A purchaser's desire to enjoy the benefit of his bargain is not an interest that tort law traditionally protects.  
Redarowicz
, 92 Ill. 2d at 177.  The remedy for economic loss, relating to a purchaser's disappointed expectations due to deterioration, internal breakdown or nonaccidental cause, lies in contract.  
Moorman
, 91 Ill. 2d at 86.  Thus, the economic loss doctrine bars recovery in tort under such circumstances (
In re Chicago Flood Litigation
, 176 Ill. 2d at 200-201, citing 
Redarowicz v. Ohlendorf
, 92 Ill. 2d 171, 177-78, 441 N.E.2d 324 (1982) (and authorities cited therein)), regardless of the plaintiff's inability to recover under an action in contract (
Anderson Electric, Inc. v. Ledbetter Erection Corp.
, 115 Ill. 2d 146, 153, 503 N.E.2d 246 (1986)).

In the instant case, the damage alleged by plaintiffs was certainly caused by gradual deterioration, internal breakage, or other nonaccidental causes, rather than a sudden or dangerous event.  See 
In re Chicago Flood Litigation
, 176 Ill. 2d at 200-201, citing 
Redarowicz
, 92 Ill. 2d at 177-78.  In addition, the complaint requested damages in excess of $30,000 as compensation for the costs incurred in removal of the underground storage tanks and abatement of the contamination.  Thus, the recovery sought by plaintiffs was their "disappointed commercial expectations" based upon the expense they incurred in restoring the property to the condition they expected when they entered into the transaction.  These damages unmistakably constituted economic losses.  Accordingly, we hold that the trial court correctly determined that the 
Moorman
 doctrine barred plaintiffs' recovery in tort.

In addition, we hold that the trial court properly dismissed Counts II and III of the complaint pursuant to section 2-615(a) of the Illinois Code of Civil Procedure.  735 ILCS 5/2-615(a) (West 1996).

Count II of plaintiffs' complaint alleged only that plaintiffs' "injuries and damages [were] a direct and proximate result of [d]efendant's *** actions."  This allegation is insufficient to assert a claim for negligence.  See 
Kirk v. Michael Reese Hospital & Medical Center
, 117 Ill. 2d 507, 525, 513 N.E.2d 387 (1987) (a legally sufficient complaint for negligence must plead facts that establish the existence of a duty owed by defendant to plaintiff, breach of the duty, and an injury proximately caused by the breach).  Moreover, even if plaintiffs had sufficiently alleged a negligence claim, recovery would be barred by the 
Moorman
 doctrine in accordance with the reasoning articulated above.

In Count III, plaintiffs sought to impose tort liability upon defendant as a matter of public policy.  Plaintiffs rely principally on 
People v. Brockman
, 148 Ill. 2d 260, 592 N.E.2d 1026 (1992), 
and 
People v. Fiorini
, 143 Ill. 2d 318, 574 N.E.2d 612 (1991), in support of their claim that the trial court erred in failing to recognize their right to recover in tort from defendant.  We note, however, that the decisions in 
Brockman
 and 
Fiorini
 are readily distinguishable.  Neither of these cases centered upon claims brought against the seller by the purchaser in a real estate transaction.  Rather, both cases involved contribution claims by a defendant/third-party plaintiff being prosecuted by the State for violations of the Illinois Environmental Protection Act (the Act) (415 ILCS 5/1 
et
 
seq.
 (West 1996)).  Although the supreme court recognized the right to assert a claim for contribution based upon the contamination of real property, the court specifically acknowledged that "it is conceivable that a party could bring a third-party claim where no private cause of action would be permitted."  See 
People v. Brockman
, 143 Ill. 2d 351, 367, 574 N.E.2d 626 (1991).  Such is the case here.

A private right of action exists where (1) the alleged violation of the statute contravenes public policy, (2) the plaintiff is a member of the class the statute is designed to protect, (3) the injury is one the statute was designed to prevent, (4) the need for civil actions under the statute is clear, and (5) there is no indication that the remedies articulated in the statute are the only remedies available.  
Sawyer Realty Group, Inc. v. Jarvis Corp.
, 89 Ill. 2d 379, 388, 432 N.E.2d 849 (1982).

It is readily apparent that the tort claim which plaintiffs' seek to pursue fails to satisfy several of these criteria.  The Illinois Environmental Protection Act and companion regulations were not designed to protect the purchasers of real estate who discover after the conveyance that remedial action is necessary to remove contaminants from the property, nor was the Act designed to protect against economic losses resulting from the obligation to remove contaminants.  In addition, there is no clear need for civil actions under the statute; the existing legislative scheme which provides for prosecution by the State of Illinois and allows contribution claims against third-party violators more than adequately serves the purpose of the statute, which is to protect the environment and minimize environmental damage (415 ILCS 5/20(b) (West 1996)).

As noted above, the recovery sought by plaintiffs consisted of purely economic losses based upon disappointed commercial expectations.  Under these facts, we hold that a private right of action under the Illinois Environmental Protection Act does not exist, and the public policy concerns which governed the decisions in 
Brockman
 and 
Fiorini
 are not present here.

Moreover, plaintiffs' argument is in direct conflict with the public policy which supports the free and unhindered sale of real estate.  
Heider
, 245 Ill. App. 3d at 275.  The public policy promoting the free alienation of real property would be severely  undermined if vendors were to be held liable in tort for economic losses resulting after they sold their interest to another party.  
Heider
, 245 Ill. App. 3d at 275.

Finally, we reject plaintiffs' contention that the Illinois Constitution supports the establishment of a private right of action in tort against a seller of contaminated property.   Section 1 of article XI of the Illinois Constitution states that "the duty of each person is to provide and maintain a healthful environment for the benefit of this and future generations."   Ill. Const. 1970, art. XI, §1.  Article XI, section 2, gives private citizens the right to "enforce this right against any party, governmental or private."  Ill. Const. 1970, art. XI, §2.  However, the Illinois Supreme Court has decisively held that section 2 of article XI does not create any hew causes of action, but merely eliminates the "special injury" requirement typically mandated in environmental nuisance cases.  
City of Elgin v. County of Cook
, 169 Ill. 2d 53, 85, 660 N.E.2d 875 (1995).  Consequently, although a plaintiff need not allege a special injury to bring an environmental claim, there must exist a cognizable cause of action; allegations of damage, even if true, are not actionable absent a cognizable cause of action.  
City of Elgin
, 169 Ill. 2d at 85-86.  We have already determined that plaintiffs are precluded from asserting a claim in tort for the economic loss incurred, and their complaint does not advance any other theory of recovery or viable cause of action.  Accordingly, we hold that the language of article XI of the Illinois Constitution does not create a mechanism by which plaintiffs can recover against defendant for the damages sought in the complaint.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

AFFIRMED.

GREIMAN, P.J., and THEIS, J., concur.