**Ray S. RUSCITTI,** as assignee of Wellington Dormitory Corporation, an Illinois corporation, Waynoka Corporation, an Illinois corporation, Ft. Madison Corporation, an Illinois corporation, and Belen Corporation, an Illinois corporation, Plaintiffs,

v.

**THE ATCHISON, TOPEKA, AND SANTA FE RAILWAY COMPANY,** a Delaware corporation, and Intermotel Leasing Inc., a Minnesota corporation, now known as Contract Lodging, a Minnesota corporation, Defendants.

No. 95 C 859.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 1, 1997.

Victor F. Ciardelli, Ciardelli & Cummings, Chicago, IL, for Plaintiffs.

Weston W. Marsh, Richard Thomas Sikes, Jr., Anthony Joseph Carballo, Freeborn & Peters, Chicago, IL, for Defendant Atchison, Topeka, and Santa Fe Ry. Co.

George N. Vurdelja, Jr., John M. Heaphy, Jr., Griswold L. Ware, Vurdelja & Heaphy, Chicago, IL, Steven R. Hedges, Abdo and Abdo, P.A., Minneapolis, MN, for Defendants Contract Lodging.

1. Intermotel is now known as Contract Lodging.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Plaintiff Ray Ruscitti ("Ruscitti") filed a ten count complaint against defendants Atchison, Topeka, and Santa Fe Railway Co. ("Santa Fe") and Intermotel Leasing[1] ("Intermotel"). Pursuant to Federal Rule of Civil Procedure 12(b)(6), Santa Fe moves to dismiss counts I–VI of Ruscitti's Third Amended Complaint for failure to state a claim upon which relief can be granted. In a separate motion, Intermotel moves to dismiss counts VII–IX of Ruscitti's complaint for failure to state a claim upon which relief can be granted. For the reasons set forth below, the court grants both motions.

### Background

This case relates to portable housing units ("dormitories"). These dormitories are movable structures that include sleeping units equipped with such necessary furnishings as beds, linens, heat and air conditioning, and towels. (See Management Agreements.) Santa Fe railroad used these dormitories to house employees whose shifts ended when their assigned train had taken them to a remote location. (Santa Fe Mem. at 2–3.) After housing crew members overnight in a dormitory, Santa Fe typically assigned those employees to work on a train returning to the employees' point of origin. (*Id.*)

Four parties play roles in this litigation. Ruscitti, the plaintiff, is an Illinois citizen and the sole shareholder of four corporations: Wellington Dormitory Corporation, Waynoka Corporation, Ft. Madison Corporation, and Belen Corporation ("Ruscitti's corporations"). (Count I, ¶ 4.) All of Ruscitti's corporations are incorporated in the state of Illinois and have their principal places of business in different states: (1) Wellington, Kansas; (2) Waynoka, Oklahoma; (3) Ft. Madison, Iowa; and (4) Belen, New Mexico. (Count I, ¶¶ 1–2.) Ruscitti's corporations own land in each of these cities and engaged in the business of providing specialized lodging services to Santa Fe's employees. (Santa Fe's Mem. at 2–3.)

Defendant Santa Fe is a railroad company incorporated in the state of Delaware with its principal place of business in Topeka, Kansas. (Count I, ¶ 6.) Santa Fe transports large shipments of cargo throughout the Midwest and Western regions of the United States. (Santa Fe's Mem. at 2–3.) The other defendant, Intermotel, is a Minnesota corporation with its principal place of business in Minnesota. (Count VII, ¶ 6.) Intermotel's business included providing property management and maintenance services for the dormitories. (Count X.)

Norlease, Inc. ("Norlease") is not a party to this action. However, Norlease played a significant role in this case. For a period of time, Norlease owned the portable dormitories that are the subject of this litigation. Norlease leased these dormitories to Santa Fe who used them to house its employees. The court does not know where Norlease is incorporated nor the location of its principal place of business. Now that the court has introduced the parties, we begin the arduous task of describing the several contractual relationships that existed among these parties.

In 1978, Ruscitti entered into four land leases with Norlease ("the lease agreements"). (Count IV, ¶¶ 10 and 11.) Under these lease agreements, Norlease occupied Ruscitti's four properties in Wellington, Kansas; Waynoka, Oklahoma; Ft. Madison, Iowa; and Belen, New Mexico. Each of these properties is located near a railroad operated by Santa Fe. The leases provided that Norlease could place temporary dormitories on each of Ruscitti's four properties. (*Id.* at ¶ 1.)

Ruscitti leased each of the four properties to Norlease at a rent of $15 for the 15½ year term of the lease. (See Leases, ¶¶ 1 and 2.) However, as additional financial consideration, the lease agreements provide that any dormitories remaining on Ruscitti's land at the termination of the four leases become Ruscitti's personal property. (*Id.*) The lease agreements also state that Norlease makes no "representations or warranties to the effect that the [dormitories] will be placed on

the [properties], nor ... the condition [of the dormitories] at the termination, of the lease term." (*Id.*)

Shortly after entering the lease agreements with Ruscitti, Norlease assigned its interests in all four lease agreements to Santa Fe.[2] (Count IV, ¶¶ 10 and 11.) After Santa Fe assumed the lease agreements, Ruscitti and Santa Fe entered into four separate management agreements ("the management agreements"). (*Id.*) Under the management agreements, Ruscitti promised to operate and maintain the dormitories on all four properties in exchange for monthly cash payments from Santa Fe. Additionally, Santa Fe agreed to reimburse Ruscitti for any monthly operating expenses. (*Id.* at ¶ 2.) In 1984, Ruscitti sold his entire interest in the management agreements to Intermotel. (Count X, ¶ 15.) Intermotel therefore took on the responsibility of managing and maintaining the portable dormitories.

The day after assuming Ruscitti's obligations under the management agreements, Intermotel, Santa Fe, and Ruscitti executed four assignment contracts ("the assignment contracts"). In the assignment contracts, Santa Fe approved Ruscitti's assignment of the management agreements to Intermotel. (*Id.*) Intermotel again agreed to operate and maintain the dormitories on Ruscitti's properties. (*Id.*) And Ruscitti again recognized that Intermotel assumed all of his management responsibilities. (*Id.*)

When the lease agreements expired, Santa Fe left the dormitories on all four of Ruscitti's properties. Therefore, under the lease agreements, these dormitories became Ruscitti's personal property. (Leases ¶ 2.) However, 15½ years of use by Santa Fe employees caused significant damage to the dormitories. (Counts I–II, ¶¶ 15, 12.) After Ruscitti acquired the dormitories and realized how extensively damaged they had become, Ruscitti sued both Santa Fe and Intermotel.

Ruscitti's Third Amended Complaint alleges three counts of negligence against Santa

---

**2.** According to the exhibits submitted with Ruscitti's Third Amended Complaint, Norlease assigned its rights to Santa Fe *before* Norlease and Ruscitti executed the lease agreements. Since this is legally impossible, the court assumes that Norlease assigned its interest *after* the execution of the lease agreements.

Fe (Counts I–III) and three counts of negligence against Intermotel (Counts VII–IX) ("the negligence counts"). Ruscitti also alleges three counts of breach of contract against Santa Fe (Counts IV–VI) and one count of breach of contract against Intermotel (Count X)[3] ("the contract claims"). Santa Fe now moves to dismiss Counts I–VI. Intermotel moves to dismiss Counts VII–IX.

## Analysis

Santa Fe and Intermotel move the court to dismiss these counts of Ruscitti's Third Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[4] A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F.Supp. 1399, 1406 (N.D.Ill.1996) (citing *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990)). Therefore, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the Ruscitti. *Zinermon v. Burch*, 494 U.S. 113, 118, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990); *Colfax Corp. v. Illinois State Toll Highway Auth.*, 79 F.3d 631, 632 (7th Cir. 1996) (citation omitted). The court will dismiss a claim only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Colfax*, 79 F.3d at 632 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

Before we address the motions to dismiss, the court must first resolve a factual inconsistency. Neither the record nor the parties explain precisely who owned the dormitories at specific points in time. For example, Ruscitti's Third Amended Complaint broadly asserts that "at all relevant times herein, Plaintiff owned the property of the Wellington/Waynoka facilities." (Count I, ¶ 5.) Likewise, Ruscitti seems to oppose the motions to dismiss because he owned the dormitories from the moment Norlease placed them on Ruscitti's land. (*E.g.*, Ruscitti's Resp. at 3.) However, the land leases attached to Ruscitti's complaint sharply contradict Ruscitti's assumption. Each of the lease agreements provides that the dormitories placed on Rus-

citti's land "shall be and remain personal property owned by the Lessee" until the termination of the lease term. (*See* Leases, ¶ 2.) Since both Norlease and Santa Fe played the role of "lessee," the court cannot confirm which of those two parties owned the dormitories. That confusion, however, does not inhibit the court's ability to determine Ruscitti's rights.

Given this contradiction, the court must conclude that Ruscitti did not own the dormitories until the lease agreements expired. "In determining the sufficiency of the complaint we must rely on the exhibits whenever the allegations of the complaint are materially inconsistent with those exhibits." *Perkins v. Silverstein*, 939 F.2d 463, 469 n. 4 (7th Cir.1991); *see also Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 991 (7th Cir.1991) (where complaint contradicts written contract attached as an exhibit, the contract terms prevail). Accordingly, the court presumes that Ruscitti did not own the dormitories until the lease agreements expired.

### I. The Negligence Claims.

Ruscitti alleges that Santa Fe and Intermotel negligently failed to (1) maintain the dormitories; (2) monitor employees' use of the dormitories; and (3) repair existing property damage. Ruscitti also alleges that Santa Fe and Intermotel negligently used the dormitories and that their breach of these duties caused structural damage to the dormitories. Santa Fe and Intermotel respond that Ruscitti's negligence claims constitute non-recoverable economic losses. Invoking the *Moorman* doctrine, Santa Fe and Intermotel contend that Ruscitti cannot recover such losses in a tort action. *See Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982).

■ The *Moorman* doctrine bars tort recovery for plaintiffs who incurred solely economic losses. *Id.* In *Moorman*, the court defined "economic loss" as "damages for inadequate value, costs of repair and replace-

---

3. Intermotel does not move to dismiss Count X.

4. Neither party addresses what state substantive law applies in this diversity case. However, both parties primarily rely on Illinois law. The court therefore presumes that both parties intend Illinois law to govern the resolution of this motion.

ment of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." *Id.* at 449, 61 Ill.Dec. at 752. The court also held that a "tort theory is appropriately suited for personal injury or property damage resulting from a sudden or dangerous occurrence," while the remedy for economic loss lies in contract. *Id.* However, *Moorman* articulated three exceptions to the economic loss rule. Under these exceptions, a party may recover economic damages in a tort action where the plaintiff sustained: (1) personal injury or property damage resulting from a sudden and dangerous occurrence; (2) damages proximately caused by a defendant's intentional false representation, i.e. fraud; and (3) damages proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in business transactions. *Moorman*, 61 Ill.Dec. 746, 435 N.E.2d at 450–52.

The *Moorman* doctrine is premised upon the theory that tort law affords a remedy for losses occasioned by personal injuries or damage to one's property, but contract law offers the appropriate remedy for economic losses occasioned by diminished commercial expectations. *In re Chicago Flood Litig.*, 176 Ill.2d 179, 223 Ill.Dec. 532, 542, 680 N.E.2d 265, 275 (1997). The proper test for distinguishing between recovery in tort and contract damages (economic losses) depends upon the nature of the defect and the manner in which the damage occurred. *Moorman*, 61 Ill.Dec. 746, 435 N.E.2d at 449.

█ To recover in tort, there must be a showing of harm above and beyond disappointed expectations. *Redarowicz v. Ohlendorf*, 92 Ill.2d 171, 65 Ill.Dec. 411, 414, 441 N.E.2d 324, 327 (1982). A purchaser's desire to enjoy the benefit of his bargain is not an interest that tort law protects. *Id.* The remedy for economic loss, relating to a purchaser's disappointed expectations due to deterioration, internal breakdown or non-accidental cause, lies in contract. *Moorman*, 61 Ill.Dec. 746, 435 N.E.2d at 450–51. Thus, the economic loss doctrine bars recovery in tort under such circumstances regardless of the plaintiff's inability to recover in a contract action. *Anderson Elec., Inc. v. Ledbetter*

*Erection Corp.*, 115 Ill.2d 146, 104 Ill.Dec. 689, 691, 503 N.E.2d 246, 248 (1986).

█ In this case, Ruscitti's damages constitute economic loss that he may not recover in a tort action. Ruscitti claims that he must either repair the damage done to the dormitories or sell them at a substantial financial loss. (Counts I–III, VII–IX.) Essentially, Ruscitti seeks damages because the dormitories he acquired at the end of the leases do not bear the economic value he previously hoped they would. Ruscitti's negligence claims therefore seek damages for "inadequate value and cost of repairs" that the *Moorman* doctrine precludes.

As the court stated in *Redarowicz*, tort law does not protect a purchaser's desire to enjoy the benefit of a bargain. *Redarowicz*, 65 Ill.Dec. 411, 441 N.E.2d at 327; *see also Shaw v. Ortell*, 137 Ill.App.3d 60, 92 Ill.Dec. 49, 52, 484 N.E.2d 780, 783 (1984) (tort law does not protect "a consumer's commercial expectation"). Rather, contract law provides the exclusive remedy for disputes relating to commercial transactions. *In Re Chicago Flood Litig.*, 223 Ill.Dec. 532, 680 N.E.2d at 275. Here, tort law does not provide Ruscitti's remedy. Instead, contract law protects Ruscitti's commercial expectation that the dormitories would bear a considerably higher economic value. Ruscitti had the opportunity to protect this commercial expectation when he negotiated the lease agreements; however, Ruscitti failed to adequately protect his economic interests. Since the lease agreements give Ruscitti ownership of the dormitories, those agreements and contract law necessarily govern Ruscitti's rights with respect to their condition. Ruscitti may not frame his cause of action as one sounding in negligence to avoid the contract that he voluntarily entered. The *Moorman* doctrine precludes Ruscitti from obtaining tort relief in that manner. The court therefore grants Santa Fe's and Intermotel's motions to dismiss counts I–III and VII–IX.

Another court in this district reached the same conclusion on similar facts. In *Konig v. Estronics, Inc.*, No. 85 C 4294, 1988 WL 79623 (N.D.Ill. June 27, 1988), the plaintiffs leased industrial property to the defendants. *Id.* at *1. At the end of the lease, the plain-

tiffs alleged that the defendants failed to maintain and allowed the roof of a building to fall into gross disrepair. *Id.* Plaintiffs sued defendants, including a claim for negligence. *Id.* Applying the *Moorman* doctrine, the *Konig* court held that the plaintiffs negligence claim could not stand because it sought recovery for purely economic losses. *Id.* at *5. The court reasoned that since a contract governed the parties' relationship, plaintiffs could not assert a tort cause of action. *Id.*

Here, Santa Fe rented land from Ruscitti and placed dormitories on that property. Like *Konig,* a contract governed the parties relationship regarding use and ownership of the buildings. And, like *Konig,* Ruscitti alleges that Santa Fe and Intermotel negligently failed to maintain and repair structural damage. This court therefore concludes that Ruscitti fails to state a claim for negligent use and repair of the dormitories because the lease agreements govern the parties relationship concerning that property.

*Moorman*'s exceptions also fail to preserve Ruscitti's negligence claims. Throughout counts I–III, VII, and IX of Ruscitti's Third Amended Complaint, Ruscitti interjects the words "sudden," "suddenly," and "sudden occurrences." However, Ruscitti also pleads that the "sudden" occurrence happened because of Santa Fe's negligence over 15½ years and Intermotel's negligence for a period of 9½ years. The court cannot find that flooding occurred "suddenly" if the waterlines burst due to gradual deterioration or internal breakage over a significant period of time. *See In re Chicago Flood Litig.,* 223 Ill.Dec. 532, 680 N.E.2d at 275 (*Moorman* doctrine precludes tort recovery for property damage caused by gradual deterioration or other non-accidental occurrence). Therefore, since the alleged occurrence does not constitute a sudden and calamitous event, Ruscitti cannot recover damages under a tort theory.

█ Ruscitti attempts to escape the *Moorman* doctrine entirely by arguing that *Moorman* only applies to buyers of products. This court disagrees. The *Moorman* doctrine is premised on the broad theory that contract law offers the appropriate remedy for economic losses occasioned by diminished commercial expectations. *In Re Chicago Flood Litig.,* 223 Ill.Dec. 532, 680 N.E.2d at 275. Here, Ruscitti's lawsuit is based solely on the diminished value of the dormitories he acquired at the end of the lease agreements. The *Moorman* doctrine therefore bars his negligence claims. And, contrary to Ruscitti's argument, the *Moorman* doctrine is not limited to buyers. *See American Xyrofin v. Allis-Chalmers Corp.,* 230 Ill.App.3d 662, 172 Ill.Dec. 289, 595 N.E.2d 650 (1992) (*Moorman* doctrine applied to dispute over leased equipment). Similarly, courts do not restrict *Moorman*'s preclusive effect to products. *See NBD Bank v. Krueger Ringier, Inc.,* 292 Ill.App.3d 691, 226 Ill.Dec. 921, 923, 686 N.E.2d 704, 706 (1997) (applying *Moorman* doctrine to real estate transaction). Accordingly, the court dismisses Ruscitti's negligence claims against both Santa Fe and Intermotel.

## II. The Contract Claims.

In counts IV–VI, Ruscitti contends that Santa Fe breached paragraphs 2(b) and 8 of the management agreements. Basically, these two paragraphs require Santa Fe to reimburse Ruscitti for any damage to the dormitories. Santa Fe responds that Ruscitti has no standing to sue under the management agreements because Ruscitti assigned all his interests in the management agreements to Intermotel. Ruscitti insists that he has standing to sue because he is a third party beneficiary of the management agreements. Ruscitti claims that he benefits from the management agreements because he owns the dormitories. The court disagrees.

█ Under Illinois law, a third party may bring an action under a contract only if the third party is in privity with one of the parties to the contract, or is a direct beneficiary. *Kaplan v. Shure Brothers Inc.,* No. 96 C 982, 1996 WL 411448, at *5 (N.D.Ill. July 18, 1996); *Altevogt v. Brinkoetter,* 85 Ill.2d 44, 51 Ill.Dec. 674, 678–79, 421 N.E.2d 182, 186–87 (Ill.1981). If the contracting parties expressed an intent to confer a benefit upon the third party, then the party is a direct beneficiary. *F.W. Hempel & Co. v. Metal World, Inc.,* 721 F.2d 610, 613 (7th Cir.1983); *Stamp v. Inamed Corp.,* 777 F.Supp. 623, 625 (N.D.Ill.1991). Express language and surrounding circumstances at the time of contracting determine whether the parties intended to directly benefit the third party. *F.W. Hempel & Co.,* 721 F.2d at 613.

Ruscitti assigned all of his interests in the management agreements to Intermotel. (Count X, ¶ 17.) Ruscitti memorialized this assignment not once, but twice. In the assignment contracts, all three parties expressly recognized that the management agreements only bound Santa Fe and Intermotel. The assignment contracts also state that Ruscitti assigned "all of [his] conditions and obligations in the [management agreements] including his interest to [Intermotel]." (*Id.*) Additionally, the agreements in which Ruscitti assigned the management agreements to Intermotel state that "[Ruscitti] agrees to sell and [Intermotel] agrees to buy *all of* [*Ruscitti's contractual rights* to operate crew [dormitories]." Based on the clear language of these two agreements, the court concludes that the parties did not intend to confer a benefit on Ruscitti. These contracts clarify that Ruscitti divested himself of any future rights under the management agreements.

The court rejects Ruscitti's argument that he is an intended beneficiary because he owned the dormitories when he assigned the management agreements to Intermotel. (Ruscitti's Resp. at 7.) The language in the lease agreements contradict this argument. The lease agreements read, in relevant part:

during any term of this lease, Lessor [Ruscitti] agrees that for all purposes said lodging [dormitories] shall be and remain personal property owned by the Lessee [Santa Fe] and shall not be considered as forming any part of the real estate comprising the Premises. . . .

During the 15½ year time period, Ruscitti only owned the land that accommodated the dormitories. Accordingly, Ruscitti is not a direct third party beneficiary of the management agreements and cannot state a claim for their breach. The court therefore dismisses counts IV through VI of Ruscitti's Third Amended Complaint.

As noted, the lease agreements govern Ruscitti's contractual rights with respect to the dormitories. Although Ruscitti does not assert a cause of action for breach of the lease agreements, Santa Fe correctly points out that any such claim would also fail. (Santa Fe's Mem. at 5–6.) Santa Fe made no representation or warranties as to the condition of the dormitories at the termination of the lease agreements. The lease agreements explicitly state that:

the Lessee [Santa Fe] does not hereby make any representations or warranties to the effect that said lodging [facilities] will be placed on the Premises, nor in respect to the value, *condition,* or use available from said lodging modules at the time of the termination of [the leases].

(Land Leases, ¶ 3.) The plain language of the lease agreements specifically disclaims any representations or warranties as to *the condition* of the dormitories upon termination of the leases. Ruscitti fairly bargained for and agreed to this disclaimer when he negotiated the lease agreements. *See, e.g., Conyers v. Molloy,* 50 Ill.App.3d 17, 7 Ill.Dec. 695, 698–99, 364 N.E.2d 986, 989–90 (1977) (contractual disclaimers valid when specific and fairly bargained for by parties). Accordingly, Ruscitti could not state a claim for breach of the lease agreements.

### Conclusion

For the foregoing reasons, the court grants Santa Fe's motion to dismiss counts I–VI and Intermotel's motion to dismiss counts VII–IX. Ruscitti and Intermotel should discuss settlement of the remaining breach of contract claim (count X) before the next court appearance.