**TEST DRILLING SERVICE CO., Plaintiff,**

v.

**The HANOR COMPANY, et al., Defendants.**

**No. 03–3063.**

United States District Court, C.D. Illinois, Springfield Division.

Nov. 24, 2003.

William S. Thomas, Rabbitt Pitzer & Snodgrass, St. Louis, MO, for Plaintiff.

Edward W. Dwyer, Thomas G. Safley, Hodge Dwyer & Zeman, Springfield, IL, for Defendant Hanor Co.

Robert E. Gillespie, John E. Nolan, Raylene D. Grischow, Hinshaw & Culbertson, Springfield, IL, for Defendants Pig Improvement and Agri–Waste Technology.

Richard F. Clough, Anne Clough, McDonald Strickland & Clough, Carrollton, IL, J. Michael Grier, Christopher K. Snow, Warden Triplett Grier, Overland Park, KS, for Defendant Terracon.

Kenneth A. Slavens, Samuel M. Wendt, Brown & James, St. Louis, MO, for Defendant Envirotech Engineering.

Daniel C. Murray, William A. Geiser, Keith L. Gibson, Johnson & Bell, Chicago, IL, for Defendant GSE Lining.

Curt J. Schlom, Daniel Tranen, Wilson Elser Moskowitz Edelman & Dicker, Chicago, IL, for Defendant Hog Slat.

## ORDER

SCOTT, District Judge.

This case comes before the Court on Motions to Dismiss filed by the Hanor Company, Inc. (d/e 80); PIC USA, Inc., f/k/a, the Pig Improvement Company, Inc. (d/e 76); Agri–Waste Technology, Inc. (d/e 78); Terracon, Inc. (d/e 74); Envirotech Engineering & Consulting, Inc., f/k/a Envirotech Services, Inc. (d/e 84); GSE Lining Technology, Inc. (d/e 82); and Hog Slat, Inc. (d/e 71). Defendants ask to dismiss Plaintiff's First Amended Complaint filed August 13, 2003 (Complaint)(d/e 70). For the reasons stated below, each Motion is ALLOWED, IN PART. All counts against each Defendant for negligence per se are dismissed. All counts for negligence remain.

## BACKGROUND

Plaintiff Test Drilling Service Company (TDSCO) is the owner of oil and gas mineral rights over an area of land totaling nearly 1,100 acres, located in Greene County, Illinois. TDSCO entered into oil and gas mineral rights agreements with three landowners and intended to operate a commercial grade oil drilling facility. Early studies of the oilfields indicated an extensive oil deposit, and early samples revealed the oil was saleable. Prior to October 2000, there was no evidence of any sort of contamination or microbial agent in any of the oil samples. As a result of these early studies, TDSCO entered into the oil and gas mineral rights agreements and began a commercial operation to extract the oil for sale. Operations began in September 2000. In October 2000, it was discovered that the oil extracted was discolored and of an unusual consistency. Studies undertaken by an independent testing company in October 2000 revealed that the oil and water extracted from the oil were contaminated. Many of the microbes and bacteria in the oil samples are the kinds of microbes and bacteria found in animal and livestock waste products.

This discovery rendered the entire quantity of oil extracted and existing in-situ, and subject to the oil and gas mineral rights agreements, unsaleable, unusable and absolutely worthless. The contaminant was also introduced to the pumping equipment, storage tanks and other equipment causing the equipment to become damaged and unusable. The bacteria found in the samples of oil taken from the site rendered the oil in the entire formation, which was subject to the oil and gas mineral rights agreements, unsaleable and ruined the entire oil deposit in the area.

Defendants The Hanor Company, Inc. (Hanor) and PIC USA, Inc. (PIC) are operators of two large hog confinement facilities in Greene County, known as the Bluffdale Facility and the Apple Creek Facility (collectively referred to as the "facilities"). Defendant Barry Smith Enterprises, Inc. was the general contractor for the construction of these facilities. Defendant Agri–Waste Technology, Inc. (Agri–Waste) provided professional design services to Hanor and PIC for the construction of the facilities, and was the principal designer of "the facility." *Compl.,* ¶ 44. Defendant Lloyd Jones Construction was a contractor or subcontractor involved in the construction of the facilities and provided erosion control services.

Defendant Envirotech Services, Inc. (Envirotech) provided professional consul-

tant and design services for the construction of the facilities. Envirotech provided professional engineering quality assurance services to Agri–Waste in the observation, supervision and inspection of the installation of liners used to line the animal waste lagoons at the facilities. Envirotech was on-site to supervise, inspect and insure that the installation of the liners was done in accordance with the plans and specifications prepared by Agri–Waste. Defendant Terracon, Inc. (Terracon) provided professional consulting, testing and design services for the construction of the facilities and provided "geotechnical" information and soil data borings for the facility. Terracon would have conducted research into the soil and rock formations in the area, research into the existence, if any, of wells in the area, and reported its findings and recommendations to Agri–Waste, the engineer of record for the project. Defendant Hog Slat, Inc. was a contractor or subcontractor involved with the construction of the facilities, and installed the concrete temporary containment structures located beneath the facilities. GSE Lining Technology, Inc. (GSE) was a contractor or subcontractor involved in the construction of the facilities, and actually installed the fabric liners used to line the animal waste lagoons "at the facility." *Compl.,* ¶ 57.

Plaintiff claims that each Defendant "allowed leachate and animal waste to escape the confines of the commercial hog confinement facility and flow into plaintiff's mineral rights."[1] *Id.* ¶¶ 73, 102, 132, 162, 192, 222, 252, 282, 312. TDSCO alleges that Defendants' failure to control leachate and animal waste caused it to sustain loss and permanent damage to property, including its mineral rights, and damage to

its operation and equipment. The seepage waste from the confines of the hog facility into the groundwater in Plaintiff's mineral rights is claimed to be "water pollution" under the Illinois Environmental Protection Act (IEPA), 415 ILCS 5/3.55.[2]

On August 13, 2003, TDSCO filed its First Amended Complaint. TDSCO has alleged two counts against each Defendant. The first count alleges negligence, and the second count alleges negligence per se. All of the Defendants who have been served have filed Motions to Dismiss.[3]

## ANALYSIS

In ruling on a motion to dismiss pursuant to *Fed.R.Civ.P.* 12(b)(6), the court "take[s] as true all well-pleaded facts and allegations in the plaintiff's complaint, and the plaintiff is entitled to all reasonable inferences that can be drawn from the complaint." *Bontkowski v. First Nat'l Bank of Cicero,* 998 F.2d 459, 461 (7th Cir.1993)(internal citations omitted). Dismissal pursuant to Rule 12(b)(6) is proper only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Midwest Gas Services, Inc. v. Indiana Gas Co., Inc.,* 317 F.3d 703, 709 (7th Cir.2003).

### A. Bar on Recovery for Economic Damages

Defendants claim they are entitled to dismissal of the Complaint because TDSCO is seeking economic damages, and under Illinois law economic damages are not recoverable in a tort action. *Moorman Manufacturing Company v. National Tank Company,* 91 Ill.2d 69, 61 Ill.Dec.

---

1. The Complaint does not specify at which "facility" this occurred.

2. This allegation that the seepage constituted "water pollution" is only contained in Count I against Hanor. *Compl.,* ¶ 65.

3. Defendants Lloyd Jones Construction and Barry Smith Enterprises have not been served with process. *See May 28, 2003 Order,* p. 5.

746, 435 N.E.2d 443 (Ill.1982). Almost all of the cases Defendants cite involve loss suffered by the buyer of a good, service, or piece of land, that allegedly was caused by the seller. *Id.* (the plaintiff purchased allegedly defective storage tanks from the defendant); *Redarowicz v. Ohlendorf,* 92 Ill.2d 171, 65 Ill.Dec. 411, 441 N.E.2d 324 (Ill.1982) (the plaintiff home-buyer sued builder of home because of defective chimney and adjoining brick wall); *Trans States Airlines v. Pratt & Whitney Canada, Inc.,* 177 Ill.2d 21, 224 Ill.Dec. 484, 682 N.E.2d 45 (Ill.1997) (sublessee of airplane sued manufacturer of airplane's allegedly defective engine); *NBD Bank v. Krueger Ringier, Inc.,* 292 Ill.App.3d 691, 226 Ill. Dec. 921, 686 N.E.2d 704, (1997) (buyer of land sued seller for contaminating the land). In those cases the courts found that the plaintiffs must base their claims on contract law, rather than tort.

The case cited by Defendants that is most analogous to this case is *In re Chicago Flood Litigation,* 176 Ill.2d 179, 223 Ill.Dec. 532, 680 N.E.2d 265 (Ill.1997). In that case a tunnel running under downtown Chicago was weakened during bridge construction, and several months later the tunnel flooded, causing flooding in much of downtown Chicago. *Id.* at 268. A class of plaintiffs sued for injury to property, lost revenues, profits and good will, lost wages, tips, and commissions, lost inventory, and expenses incurred in obtaining alternate lodging. *Id.* The trial court ruled that *Moorman* barred recovery to the plaintiffs who alleged only economic loss, and not physical property damage. *Id.* at 274. The appellate court held that the claims of plaintiffs alleging only economic loss were barred under *Moorman,* but the claims of plaintiffs who suffered property damage from lost inventory due to interrupted utility service were not barred. *Id.* at 270.

The Illinois Supreme Court noted that under *Moorman,* economic loss is defined as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits— *without any claim of personal injury or damage to other property.* ..." *Id.* at 274, *quoting Moorman,* 91 Ill.2d at 82, 61 Ill. Dec. 746, 435 N.E.2d 443 (emphasis added in *In re Chicago Flood Litigation* opinion). The Supreme Court noted that one of the exceptions to the *Moorman* economic loss rule was when the plaintiff sustained damage, such as "personal injury or property damage resulting from a sudden or dangerous occurrence." *Id.* at 275. Thus the economic loss rule barring recovery in tort "applies even to plaintiffs who have incurred physical damage to their property if the damage is caused by disappointed commercial expectations, gradual deterioration, internal breakage, or other nonaccidental causes, rather than a dangerous event." *Id.* The court clarified that even if there was a sudden, dangerous, or calamitous occurrence, the plaintiff must allege personal injury or property damage to avoid a bar to recovery by the economic loss rule. *Id.* "To recover in negligence there must be a showing of harm above and beyond disappointed expectations." *Id.* at 276, *quoting Redarowicz,* 92 Ill.2d at 177, 65 Ill.Dec. 411, 441 N.E.2d 324.

The Supreme Court noted that the plaintiffs' loss of continuous electrical service is a disappointed commercial expectation. *Id.* However, the lost perishable goods caused by the flood are above and beyond the plaintiffs' disappointed commercial expectation in continuous electrical service. *Id.* Therefore, the Supreme Court held that those "losses fall outside the definition of economic loss and are recoverable in tort." *Id.*

In this case, TDSCO alleges that it suffered damage to its property, including its pumping equipment as well as to its mineral rights. *Compl.,* ¶¶ 16, 59. It is ambigu-

ous from the language of the Complaint whether TDSCO possesses an ownership interest in the oil and mineral rights, or whether it possesses a contractual interest to drill for oil on the property. The Court must view all ambiguities in a light most favorable to TDSCO, and thus assumes TDSCO had an ownership interest in the oil and mineral rights, and that property right was injured. If in fact TDSCO only possessed a contractual right to drill for oil on the property, without any property interest in the mineral rights, then any recovery would be limited to damage to TDSCO's equipment. Recovery for any lost profits arising from damage to the oil caused by the alleged contamination would be barred under *Moorman* and *In re Chicago Flood Litigation.*

 The property damage TDSCO suffered was allegedly caused by a dangerous occurrence, namely the leakage of animal waste into the oil and water due to the negligent construction, maintenance and operation of the hog confinement facility. Therefore, TDSCO has alleged sufficient property damage to fall under the exception to the *Moorman* doctrine that the Illinois Supreme Court set forth in *In Re Chicago Flood Litigation.* Therefore, dismissal of TDSCO's Complaint on the grounds that TDSCO alleges damages barred by the *Moorman* doctrine is not warranted. The Court, when viewing the Complaint in a light most favorable to TDSCO, finds that it states a claim for negligence against the Defendants.[4]

B. *Dismissal of Negligence Per Se Claims*

TDSCO has alleged a count of negligence per se against each Defendant for violation of Illinois environmental law. Defendants allegedly violated 415 ILCS 5/21(a) which provides that no person shall cause or allow dumping of any waste; 415 ILCS 5/21(d)(1) which prohibits any person from conducting a waste storage, treatment or disposal operation without a permit or in violation of permit conditions; 415 ILCS 5/21(f)(1–3) which prohibits any person from conducting a hazardous waste storage, treatment, or disposal operation without a permit or in violation of permit conditions, state regulations, or permit filing requirements. Defendants also violated 415 ILCS 5/12(a), (d), and (f) which prohibits any person from allowing discharge of contaminants so as to cause water pollution, deposit contaminants so as to create a water pollution hazard, and to discharge contaminants without a permit, or in violation of state regulations or permit conditions, or permit filing requirements. 720 ILCS 5/47–5 (1), (2), (3), and (10) are under the Public Nuisance section of the Illinois Criminal Code which makes it a public nuisance to allow filth or offensive material to be deposited to the prejudice of others, to be deposited in water sources, and to allow a well drilled in connection with the production of oil and gas to remain unplugged once no longer in use.

Defendants also violated state environmental regulations which prohibit the release of contaminants into groundwater so as to require additional treatment to the water; prohibit livestock waste from being applied in waterways, during a rainfall, or to saturated soil; and require livestock waste holding facilities to be impermeable, and capable of withstanding pressure, and holding ponds or lagoons to be impermea-

---

4. Defendant GSE Lining Technology, Inc. suggests that TDSCO is alleging an impermissible cause of action "couched" as a negligence claim. *Motion to Dismiss of Defendant GSE Lining Technology, Inc.,* (d/e 82), p. 4. However the Court must view the allegations in a light most favorable to TDSCO, and thus, the Complaint sufficiently states a cause of action for negligence.

ble so as to prevent groundwater or surface water pollution. 35 Ill. Admin. Code 620.301, 560.205, 560.207 and 501.404(c)(1) and (2).

Under Illinois law, violation of a statute designed to protect life or property is prima facie evidence of negligence. *Davis v. Marathon Oil Co.,* 64 Ill.2d 380, 1 Ill.Dec. 93, 356 N.E.2d 93, 97 (Ill.1976). However, the violation does not constitute negligence per se, since evidence of negligence may be rebutted with proof that the party acted reasonably under the circumstances, despite the violation. *Id.* The violation of the statute is not negligence per se, which refers to strict liability, unless the legislature clearly intends to impose strict liability. *Abbasi ex rel Abbasi v. Paraskevoulakos,* 187 Ill.2d 386, 240 Ill. Dec. 700, 718 N.E.2d 181, 186 (Ill.1999).

In *Abbasi,* the plaintiff brought a claim for negligence, and a private cause of action against her landlord, under the Illinois Lead Poisoning Prevention Act, 410 ILCS § 45/1 *et seq. Id.* at 184. Plaintiffs claimed that the defendant was liable in a private cause of action under the Lead Poisoning Act even if defendant had no notice of the lead hazard, which was the key distinction between the private cause of action under the Act and the negligence action. *Id.* at 186. The Illinois Supreme Court held that allowing such a private cause of action would mean that a defendant would be held strictly liable for violating the Lead Poisoning Prevention Act. *Id.* at 186. The Supreme Court stated that violation of the statute is not negligence per se, which refers to strict liability, but rather only prima facie evidence of negligence because the Illinois legislature did not impose strict liability in tort for violating the Lead Poisoning Prevention Act. *Id.* at 186. (comparing Lead Poisoning Prevention Act, which provided that failure to remove lead hazard was prima facie evidence of negligence, 410 ILCS 45/15, with

Consignment of Art Act, which provided that an art dealer is strictly liable for loss or damage to work of fine art while in its possession, 815 ILCS 320/2(5)). Therefore, the court concluded that the only cause of action under the statute is for negligence. *Id.* The plaintiff already had pending a negligence action based on violation of the statute, and it was unnecessary to create a private cause of action under the Lead Poisoning Prevention Act. *Id.*

In this case TDSCO has alleged, against each Defendant, one count of negligence and one count of negligence per se, both based in part on violations of the IEPA and other regulations. The statutory and regulatory violations are evidence of negligence, but not negligence per se which refers to strict liability, unless the legislature clearly intended to impose strict liability. *Id.*

TDSCO has not shown that the legislature intended to impose strict liability for violating the statutory sections or regulations it claims Defendants violated. The Court has reviewed the language of the statutes and regulations cited and does not find any evidence that the legislature intended to impose strict liability. It is true that, unlike the Lead Poisoning Prevention Act, there is no explicit language providing that violating the statute constitutes prima facie evidence of negligence. *See Id.* However, there is no explicit language imposing strict liability nor is there language which shows the legislature intended to impose strict liability. Therefore, TDSCO's claims for negligence per se are not proper.

In support of its negligence per se claim, TDSCO has cited to *Evco Associates, Inc. v. C.J. Saporito Plating Co.,* No. 93 C 2038, 1993 WL 348691 (N.D.Ill. September 7, 1993). In that case, the court cited the *Davis* holding that violation of a statute is prima facie evidence of negligence but not

negligence per se. *Id.* at *4. The district court did not read *Davis* so broadly as to mean that there is no cause of action for negligence per se in Illinois. *Id.* The district court noted that violation of a statute does not constitute negligence per se because negligence may be rebutted by proof that the defendant acted reasonably under the circumstances. *Id.* The district court concluded that, "[T]his explanation suggests that another analysis must be engaged in before a statutory violation will be deemed negligence per se. It does not support defendant's contention that there is no cause of action for negligence per se." *Id.*

■ Negligence per se refers to strict liability, which imposes liability regardless of the reasonableness of a defendant's conduct. *Abbasi,* 718 N.E.2d at 185, *citing Prosser and Keeton on Torts,* § 75 at 534 (5th ed.1984). Allowing a defendant to avoid liability based on the reasonableness of his conduct would mean that strict liability is not imposed, and there is no claim for negligence per se. *Id.* Since the legislature did not intend to impose strict liability on the various statutory provisions TDSCO alleges were violated, TDSCO cannot state a claim for negligence per se. *Evco Associates* is correct in stating that actions for negligence per se are allowed in Illinois. However, they are allowed for statutory violations only if the statute provides for strict liability if violated. This is not the case here.

## C. *Failure to Allege Duty of Care as to PIC*

TDSCO alleges that PIC owed a duty to control leachate and animal waste at its facility, and to allow leachate to escape pursuant to the mandatory provisions of the IEPA, 415 ILCS 5/21(a), (d)(1), and (f)(1–3), and Pollution Control Board regulations. *Compl.,* ¶ 97. These IEPA sections prohibit dumping of waste; conduct-ing a waste storage, treatment, or disposal operation without a permit or in violation of permit conditions; and conducting a hazardous waste storage, treatment, or disposal operation without a permit or in violation permit conditions, state regulations, or permit filing requirements. TDSCO also claims that PIC owed a duty to operate its facility in a manner preventing discharge of contaminants into the environment so as to cause water pollution in Illinois and in TDSCO's mineral rights, pursuant to the IEPA, 415 ILCS 5/12(a), (d) and (f). *Id.* ¶ 98. PIC owed a duty to operate its facility in a manner which prevented waste exiting the confines of the facility and entering the waters of Illinois, pursuant to the IEPA, 415 ILCS 5/12(a), (d), and (f). *Id.* ¶ 99. Section 5/12 of the IEPA prohibits discharge of contaminants so as to cause water pollution.

PIC claims that TDSCO has failed to allege a duty of care. TDSCO, PIC asserts, has failed to articulate adequately the application of the IEPA, the Public Nuisance Statute, and pollution regulations to the present case, because those statutes are not designed to protect TDSCO. PIC also claims that it does not owe a duty to TDSCO under Article III of the IEPA, 415 ILCS 5/11 et seq, because the purpose of the statute is to protect water and not mineral rights or undrilled oil. PIC claims TDSCO has attempted to impose a general duty of care to prevent water pollution and not pollute anything beyond the confines of the facility, but the IEPA does not impose such a broad duty on PIC. PIC also claims that Article V of the IEPA is concerned with public health and safety, not protection of unmined oil. *See PIC's Memorandum in Support of Motion to Dismiss* (d/e 77), p. 10. PIC is the only Defendant to advance the argument that TDSCO has failed to allege a duty of care. TDSCO has not addressed this argument in its Response to the Motions to Dismiss.

 "A duty requires a person to conform to a certain standard of conduct for the protection of another against an unreasonable risk of harm." *Widlowski v. Durkee Foods*, 138 Ill.2d 369, 150 Ill.Dec. 164, 562 N.E.2d 967, 968 (1990). "[A] person owes a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act...." *Id.* TDSCO has sufficiently alleged a duty of ordinary care owed by PIC. PIC failed to exercise due care in the selection of the location, design and construction, and operation of its facility. *Compl.,* ¶ 104. TDSCO has sufficiently alleged that PIC owed a duty of ordinary care to control the storage and disposal of waste in the operation of its facility. PIC owed a duty of ordinary care to control waste at its facility, and to allow waste to escape the facility only in a manner which would not damage other property or the environment. The Court will not strike paragraphs 98 and 101 of the Complaint, which allege that PIC owed a duty to prevent discharge of contaminants in a manner that would cause water pollution, and to control waste and to prevent it from escaping, pursuant to 415 ILCS 5/12 (a), (d), and (f), and regulations of the Illinois Pollution Control Board. The duty owed will be deemed one of ordinary care, and evidence that the discharge was contrary to the statutes and/or regulations will be weighed in connection with the question of whether PIC acted reasonably.

THEREFORE, Defendants' Motions to Dismiss are ALLOWED, IN PART. The Court dismisses Count II which alleges negligence per se against Hanor, Inc.; Count IV which alleges negligence per se against PIC USA, Inc.; Count VI which alleges negligence per se against Agri–Waste Technology, Inc.; Count VIII which alleges negligence per se against Terracon, Inc.; Count XIV which alleges negligence per se against Envirotech Engineering & Consulting, Inc.; Count XVI which alleges negligence per se against GSE Lining Technology, Inc.; and Count XVIII which alleges negligence per se against Hog Slat, Inc. The Court does not dismiss the remaining claims which allege negligence. Defendants are ordered to file an answer to the remaining claim against them on or before December 15, 2003.

IT IS THEREFORE SO ORDERED.